CLYDE "ED" SNIFFEN
ACTING ATTORNEY GENERAL

John M. Ptacin (Alaska Bar No. 0412106)
Chief Assistant Attorney General
Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-5073
Facsimile: (907) 276-3697
Email: john.ptacin@alaska.gov

*Attorney for State of Alaska*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| SOVEREIGN IÑUPIAT FOR A LIVING ARCTIC, *et al.*,<br>　　　　　　　　　　　　　Plaintiffs,<br>v.<br>BUREAU OF LAND MANAGEMENT, *et al.*,<br>　　　　　　　　　　　　　Defendants,<br>and<br>CONOCOPHILLIPS ALASKA, INC.,<br>　　　　　　　　　　　Intervenor-Defendant. | **Case No.: 3:20-cv-00290-SLG** |

**AMICUS BRIEF SUPPORTING DEFENDANTS' AND INTERVERNORS'
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION AND MOTION
FOR TEMPORARY RESTRAINING ORDER**

The State of Alaska (State) files this amicus brief to shed light on the public

interests at stake in delaying National Petroleum Reserve in Alaska (NPR-A)

development.[1]

---

[1] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); see also *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

*Sovereign Iñupiat for a Living Arctic et al. v. BLM et al.* - Case No. 3:20-cv-00290-SLG
1

## STATEMENT OF FACTS

The State adopts the Bureau of Land Management (BLM) and ConocoPhillips Alaska Inc.'s (ConocoPhillips) statement of facts to the extent relevant to the public interest question.

## STANDARD OF REVIEW

The State adopts the BLM and ConocoPhillips' standard of review to the extent relevant to the public interest question.

## ARGUMENT

**A.  Public interest favors development of Federal Resources within Alaska's borders.**

NPR-A exploration and development is critical to the State's future. The public interest is not met by delaying the Willow project. The State asks the Court to consider three important public interests:

- North Slope infrastructure expansion benefits Alaskans
- Development benefits an aging Trans-Alaska Pipeline System
- Revenue from NPR-A development supports local and state economies.

**1.  Westward expansion of infrastructure benefits State interests.**

The Alaska Statehood Act and the Alaska Constitution recognize that resource development was, and would be, the cornerstone of Alaska's economy and Alaska's contribution to the national economy.[2] The NPR-A was designated a "national petroleum

---

[2]  ALASKA CONST. art. VIII, § 1; 43 U.S.C. § 1311(a).

*Sovereign Iñupiat for a Living Arctic et al. v. BLM et al.* - Case No. 3:20-cv-00290-SLG
2

reserve" in 1923.[3] And in 1980, Congress directed that an expeditious program of competitive leasing of oil and gas be carried out, balanced against reasonable protection of surface resources.[4] Thus, as a general matter, the public interest requires NPR-A development in consonance with these mandates.

The State has an interest in leaseholds at or near the NPR-A site.[5] The State hopes to learn a great deal from the westward expansion of operations in the NPR-A (as contemplated by ConocoPhillips's plan) to responsibly develop its neighboring resources, which generates revenue for the State. Not only does ConocoPhillip's development provide informational assistance to the potential development of adjacent State lands, but it may also provide an infrastructure corridor for oil and gas developed on these neighboring State lands.[6]

---

[3] *Northern Alaska Environmental Center et. al. v. Kempthorne et. al.*, 457 F.3d 969, 973 (9th Cir. 2006).

[4] 42 U.S.C. Sec. 6506a(a); 6508.

[5] U.S. Dep't of Interior, Geological Survey, Fact Sheet: Assessment of Undiscovered Oil and Gas Resources in the Cretaceous Nanushuk and Torok Formations, Alaska North Slope, and Summary of Resource Potential of the National Petroleum Reserve in Alaska, pp. 1-2 (2017), *https://pubs.usgs.gov/fs/2017/3088/fs20173088.pdf* (last visited Jan. 10, 2021). The Court may take judicial notice of agency websites and public records. *See Ariz. Libertarian Party v. Reagan*, 798 F.3d 723, 727 n.3 (9th Cir. 2015) ("We may take judicial notice of 'official information posted on a governmental website, the accuracy of which [is] undisputed." (quoting *Dudum v. Arntz*, 640 F.3d 1098, 1101 n.6 (9th Cir. 2011))); *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001) (stating the court may take judicial notice of undisputed public records).

[6] U.S. Dep't of Interior, Geological Survey, Fact Sheet: Assessment of Undiscovered Oil and Gas Resources in the Cretaceous Nanushuk and Torok Formations, Alaska North Slope, and Summary of Resource Potential of the National Petroleum Reserve in Alaska, pp. 1-2 (2017), *https://pubs.usgs.gov/fs/2017/3088/fs20173088.pdf* (last visited Jan. 10, 2021); *see supra* note 5 (regarding judicial notice).

*Sovereign Iñupiat for a Living Arctic et al. v. BLM et al.* - Case No. 3:20-cv-00290-SLG

## 2. NPR-A development benefits transportation infrastructure.

Ultimately, NPR-A oil production could create efficiencies on Alaska's aging Trans–Alaska Pipeline System (TAPS).[7] TAPS is an 800–mile–long oil pipeline system that connects Alaska North Slope oil reserves to a shipping terminal in Valdez, Alaska.[8] The pipeline was constructed between 1974 and 1977 at a cost of approximately $8 billion.[9] NPR-A oil—if developed—would flow through TAPS.[10]

For TAPS to run efficiently, it requires a certain amount of throughput. As throughput on TAPS declines from its peak of 2 million barrels per day, oil travels along the pipeline much slower.[11] Problems arise with low throughput because slower oil cools, which creates freezing and corrosion, which compromise the integrity of the pipeline

---

[7] *See* U.S. Dep't of the Interior, Bureau of Land Management, Willow Master Development Plan Environmental Impact Statement, Final Environmental Impact Statement, Volume 1 p. 11 (2020), *https://eplanning.blm.gov/public_projects/109410/200258032/20028362/250034564/20200807_Willow%20MDP%20FEIS_Volume1_508.pdf* (last visited Jan. 10, 2021); *see supra* note 5 (regarding judicial notice).

[8] *State of Alaska, Dep't of Rev. v. BP Pipelines (Alaska) Inc.*, 354 P.3d 1053, 1056 (Alaska 2015).

[9] *Id*.

[10] *See* U.S. Dep't of the Interior, Bureau of Land Management, Willow Master Development Plan Environmental Impact Statement, Final Environmental Impact Statement, Volume 1 p. 11 (2020), *https://eplanning.blm.gov/public_projects/109410/200258032/20028362/250034564/20200807_Willow%20MDP%20FEIS_Volume1_508.pdf* (last visited Jan. 10, 2021); *see supra* note 5 (regarding judicial notice).

[11] *In the Matter of Flint Hills Resources Alaska, LLC*, 136 FERC P 61021 (F.E.R.C.), No. OR11-8-000, 2011 WL 2661397, at *1, *2 (2011); see Petition for Writ of Certiorari, *Alaska Oil and Gas Assn. et al v. Jewell*, 2016 WL 6577257 * 27-28 (2016).

*Sovereign Iñupiat for a Living Arctic et al. v. BLM et al.* - Case No. 3:20-cv-00290-SLG

4

Case 3:20-cv-00290-SLG   Document 23-3   Filed 01/15/21   Page 4 of 10

system, creates environmental risk, and costs money to address.[12]

TAPS owners prepare "Very Low Flow Studies" in order to study concerns related to throughput decline.[13] The studies assume that the application of heat at various points along the pipeline would be a feasible way to achieve lower throughput levels without compromising the integrity of the pipeline.[14] But all indications are that TAPS runs more efficiently with more oil than is currently in the pipeline.[15] The Willow Project is anticipated to have a peak production in excess of 160,000 barrels of oil per day (with a processing capacity of 200,000 barrels of oil per day) over its 30-year life, producing approximately 586 million barrels of oil.[16] Without new projects infusing oil into TAPS, costs to run the pipeline will go up and integrity in the pipeline will go down.

TAPS throughput is important to the State for a second reason—more barrels through TAPS equates to less shipping costs per barrel.[17] The Federal Energy Regulation

---

[12] *Id. See also BP Pipelines (Alaska) Inc. v. State, Dep't of Rev.*, 325 P.3d 478, 494 (Alaska 2014) (stating that excess capacity on TAPS equates to significant cost).

[13] *State, Dept. of Rev. v. BP Pipelines (Alaska Inc.) et al.*, 354 P.3d 1053, 1063 (Alaska 2015); James Brooks, Slow Flow, Low Flow is Oil Pipeline's Issue, JUNEAU EMPIRE, Feb. 3, 2016, https://www.juneauempire.com/news/slow-flow-low-flow-is-oil-pipelines-issue/.

[14] *Id.*

[15] *Id.*

[16] *See* U.S. Dep't of the Interior, Bureau of Land Management, Willow Master Development Plan Environmental Impact Statement, Record of Decision, p. 1 (2020), https://eplanning.blm.gov/public_projects/109410/200258032/20029172/250035373/2020-10-27_ROD_508.pdf; s*ee supra* note 5 (regarding judicial notice).

[17] In 2018, the State of Alaska, TAPS owners, and independent shippers settled a series of cases resulting in variable tariff methodology which adjusts future rates for past over-collections or past under-collections in the event throughput exceeds prior-year

*Sovereign Iñupiat for a Living Arctic et al. v. BLM et al.* - Case No. 3:20-cv-00290-SLG

5

Commission (FERC) and the Regulatory Commission of Alaska (RCA) regulate how much TAPS can charge to ship oil.[18] TAPS—in setting the FERC regulated shipping cost—takes all just and reasonable costs and divides those costs by the number of barrels TAPS ships in a given year.[19] Increased throughput—like that which occurred between 2017 and 2018––lowers the tariff and increases revenues for the State because oil producers deduct the TAPS tariff from the value of oil for tax and royalty purposes.[20]

### 3. NPR-A exploration and development promotes job growth and creates revenue for local and state services.

Revenue generated from the NPR-A specifically targets North Slope communities. Although the Federal Government manages the NPR-A, fifty percent of the revenues received from the "sales, rentals, bonuses, and royalties on leases issued . . ." are paid to the State of Alaska.[21] Roughly fifty percent of that amount funds grants to help the communities most impacted by NPR-A development.[22] The State administers these grants through the NPR-A Impact Mitigation Grant Program.[23] Since its inception,

---

projections. *See* Certification of Uncontested Settlement, 162 FERC P 61180; 162 FERC P 63001.

[18]  AS 42.06.350; 49 U.S.C. § 60502.

[19] *See* Certification of Uncontested Settlement, 162 FERC P 61180; 162 FERC P 63001.

[20]  AS 43.55.150(a)-(b); 15 AAC 55.193; 11 AAC 25.160. The basic formula is "lower tariffs equal higher revenues."

[21]  42 U.S.C. § 6506.

[22]  42 U.S.C. § 6506; AS 37.05.530(c). The funding formula for NPR-A proceeds is indeed complex. Under certain circumstances, some of the funds are transferred to the power cost equalization and rural electric capitalization funds.

[23]  *See* State of Alaska Dep't of Commerce, Community, and Economic Development, National Petroleum Reserve – Alaska (NPR-A) Impact Mitigation Grant Program Report to the Second Session of the Thirty-first Alaska Legislature (2020),

*Sovereign Iñupiat for a Living Arctic et al. v. BLM et al.* - Case No. 3:20-cv-00290-SLG

proceeds from the NPR-A Impact Mitigation Grant Program have targeted the needs of North Slope communities, including:

- search and rescue, fire department, and ambulance services[24]
- Community telecommunication systems[25]
- crisis services and youth programs[26]
- power plants[27]
- community centers[28]
- roads[29]
- playgrounds[30]

In 2020, the NPR-A Impact Mitigation Grant Program is projected to fund an additional $10.8 million of projects requested by local communities near the NPR-A and will also fund state government.[31] Long-term Willow development within the NPR-A would add more money to the NPR-A Impact Mitigation Grant Program. And any delay

---

*https://www.commerce.alaska.gov/web/Portals/4/pub/NPR-A%20Grant/2020%20Report%20to%20the%20Legislature.pdf* (last visited Jan. 10, 2021). For purposes of this amicus request and the briefing, the State of Alaska has created an "Exhibit A" for this report. *See supra* note 5 (regarding judicial notice).

[24] Exhibit A, pp. 13; 21; 31-32; 49-50; 56; 61; 71.

[25] Exhibit A, pp. 21; 31; 40; 42.

[26] Exhibit A, pp. 9; 13; 40; 46; 49; 54-55; 73; 75.

[27] Exhibit A, pp. 16; 52.

[28] Exhibit A, pp. 9; 11-12; 30; 70; 72-73.

[29] Exhibit A, pp. 20; 50; 53.

[30] Exhibit A, pp. 35; 42; 72.

[31] Exhibit A, p. 9.

*Sovereign Iñupiat for a Living Arctic et al. v. BLM et al.* - Case No. 3:20-cv-00290-SLG

7

in that development thus delays money to the program and to the Alaskans who depend on it.

The Willow development will also help stimulate Alaska's economy as well as contribute to the nation's energy needs.[32] Failure to support responsible exploration and development in the NPR-A reduces aid to North Slope communities and the State, limits potential for job growth, and risks national security. Alaska development—notwithstanding the recent global pandemic—is on a bit of an upswing. For instance, the results of recent lease sales in the NPR-A and areas in the Beaufort Sea and North Slope signify industry's continued interest and commitment to Alaska development. In December 2019, BLM held a lease sale in the NPR-A, generating $11,268,709 in winning bids.[33] According to the Alaska Journal of Commerce, "Other than 2016, when companies spent $18.8 million on leases, this lease sale was the largest collective bid amount for an NPR-A lease sale since 2008.[34] The results of the State's December 2019

---

[32] *See* U.S. Dep't of the Interior, Bureau of Land Management, Willow Master Development Plan Environmental Impact Statement, Final Environmental Impact Statement, Volume 1 pg. 1 (2020), *https://eplanning.blm.gov/public_projects/109410/200258032/20028362/250034564/20200807_Willow%20MDP%20FEIS_Volume1_508.pdf*; s*ee supra* note 5 (regarding judicial notice).

[33] U.S. Dep't of the Interior, Bureau of Land Management, NPR-A Lease Sale Summary*,* https://www.blm.gov/sites/blm.gov/files/uploads/OilandGas_Alaska_2019_NPR-A_Lease-Sale-Bid-Recap.pdf; s*ee supra* note 5 (regarding judicial notice).

[34] Elwood Brehmer, Armstrong-led Company Spends Big, Snags 1M acres in NPR-A, ALASKA JOURNAL OF COMMERCE, December 18, 2019, https://www.alaskajournal.com/2019-12-18/armstrong-led-company-spends-big-snags-1m-acres-npr.

*Sovereign Iñupiat for a Living Arctic et al. v. BLM et al.* - Case No. 3:20-cv-00290-SLG

8

lease sale for areas in the Beaufort Sea and North Slope areas were also considerable, with a combined $7.8 million in bids.[35] In times when so few oil and gas projects are going forward, delaying NPR-A development would weaken industry interest in Alaska, which does not benefit Alaska's mandate to responsibly develop its natural resources.

## CONCLUSION

Delays to North Slope development on Federal Land within Alaska's borders is not in the public interest.

DATED January 15, 2021

                          CLYDE "ED" SNIFFEN
                          ACTING ATTORNEY GENERAL

                        By:   /s/ John M. Ptacin
                              John M. Ptacin
                              Chief Assistant Attorney General
                              Alaska Bar No. 0412106
                              Department of Law
                              1031 West Fourth Avenue, Suite 200
                              Anchorage, AK 99501
                              Phone: (907) 269-5073
                              Facsimile: (907) 276-3697
                              Email: john.ptacin@alaska.gov
                              *Attorney for State of Alaska*

---

[35]   *Id*.

*Sovereign Iñupiat for a Living Arctic et al. v. BLM et al.* - Case No. 3:20-cv-00290-SLG

## Certificate of Service

I certify that on January 15, 2021, I caused a true and correct copy of the foregoing document to be filed using the Court's Electronic Case Files System ("ECF"). The document is available for review and downloading via the ECF system, and will be served by operation of the ECF system upon all counsel of record.

/s/ Hannah B. Pothast
Law Office Assistant I