Tyson C. Kade
Jonathan D. Simon
Melinda L. Meade Meyers
VAN NESS FELDMAN, LLP
1050 Thomas Jefferson Street, NW
Seventh Floor
Washington, DC  20007
Tel.: 202.298.1800
Fax: 202.338.2416
Email: tck@vnf.com
        jxs@vnf.com
        mmeademeyers@vnf.com

*Counsel for Movant North Slope Borough*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SOVEREIGN IÑUPIAT FOR A LIVING ARCTIC, et al., | |
| Plaintiffs, | Case No. 3:20-cv-00290-SLG |
| v. | |
| BUREAU OF LAND MANAGEMENT, et al., | |
| Defendants, | |
| and | |
| CONOCOPHILLIPS ALASKA, INC., | |
| Intervenor-Defendant. | |

## MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE BY NORTH SLOPE BOROUGH

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - i
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No. 3:20-cv-00290-SLG

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

I.      INTRODUCTION ........................................................................................ 1

II.     BACKGROUND ........................................................................................... 2

        A.      The NPR-A ........................................................................................ 2

        B.      The Willow Project ......................................................................... 3

        C.      The Borough ..................................................................................... 5

III.    ARGUMENT ................................................................................................. 8

        A.      The Borough Is Entitled to Intervene As of Right. ...................... 8

                1.      The Motion Is Timely. ......................................................... 9

                2.      The Borough Has Significantly Protectable Interests in the Subject
                        Matter of This Case. .......................................................... 11

                3.      Judgment in Favor of Plaintiffs Would Impair the Borough's
                        Interests. ............................................................................. 15

                4.      The Borough's Interests Are Not Adequately Represented by
                        Existing Parties to the Litigation. ..................................... 17

        B.      In the Alternative, the Borough Satisfies the Standard for Permissive
                Intervention. .................................................................................. 19

IV.     CONCLUSION ........................................................................................... 20

CERTIFICATE OF COMPLIANCE ................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arakaki v. Cayetano*,
 324 F.3d 1078 (9th Cir. 2003) ..................................................................... 17

*California ex rel. Lockyer v. United States*,
 450 F.3d 436 (9th Cir. 2006) ....................................................................... 11

*Center for Biological Diversity v. BLM*,
 No. 21-35095 (9th Cir. Feb. 13, 2021) ................................................... 4, 10

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
 647 F.3d 893 (9th Cir. 2011) ........................................................ 10, 15, 17

*Forest Conservation Council v. U.S. Forest Service*,
 66 F.3d 1489 (9th Cir. 1995) ....................................................................... 18

*Freedom from Religion Foundation, Inc. v. Geithner*,
 644 F.3d 836 (9th Cir. 2011) ................................................................. 19, 20

*Northwest Forest Resource Council v. Glickman*,
 82 F.3d 825 (9th Cir. 1996) ......................................................................... 10

*Smith v. Los Angeles Unified School District*,
 830 F.3d 843 (9th Cir. 2016) ......................................................................... 9

*Southwest Center for Biological Diversity v. Berg*,
 268 F.3d 810 (9th Cir. 2001) ....................................................................... 18

*United States v. City of Los Angeles*,
 288 F.3d 391 (9th Cir. 2002) ................................................................. 11, 15

*United States v. Sprint Communications, Inc.*,
 855 F.3d 985 (9th Cir. 2017) ....................................................................... 11

*Wilderness Society v. U.S. Forest Service*,
 630 F.3d 1173 (9th Cir. 2011) (en banc) ................................................. 9, 11

**Statutes**

42 U.S.C. § 6501 et seq. ....................................................................... 2

42 U.S.C. § 6506a(a) ............................................................................. 2

Alaska Stat. § 29.04.010 ........................................................................ 5

Alaska Stat. § 29.45.080(a) ............................................................... 6, 12

Alaska Stat. § 43.56.010(b) ............................................................... 6, 12

NSB Ordinance § 3.27.050(A) ......................................................... 6, 12

**Other Authorities**

43 C.F.R. pt. 3000.................................................................................. 3

43 C.F.R. pt. 3130.................................................................................. 3

43 C.F.R. pt. 3150.................................................................................. 3

43 C.F.R. pt. 3160.................................................................................. 3

Exec. Order No. 3797-A (Feb. 27, 1923) ............................................... 2

Fed. R. Civ. P. 24(a) ..................................................................... 2, 8, 20

Fed. R. Civ. P. 24(b) ............................................................... 2, 8, 19, 20

Fed. R. Civ. P. 24(b)(1)(B) .................................................................. 19

H.R. Rep. No. 94-81, pt. I (1975) .......................................................... 2

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - iv
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No.
3:20-cv-00290-SLG

# I.       INTRODUCTION

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, the North Slope Borough ("Borough") moves to intervene as a defendant in this action challenging the U.S. Department of the Interior's approval of the Willow Master Development Plan ("Willow MDP") and challenging several related federal agency decisions.  The Willow MDP authorizes ConocoPhillips Alaska, Inc. ("CPAI") to construct and operate infrastructure necessary to develop oil and gas resources on lands that it has leased in the National Petroleum Reserve in Alaska ("NPR-A") (hereinafter, the "Willow Project").  Plaintiffs seek declaratory and injunctive relief that would vacate the federal agency decisions authorizing the Willow Project and prohibit CPAI from proceeding with its lawfully authorized development activities.

The Borough is the area-wide local government representing the residents living on the North Slope of Alaska and in the NPR-A.  Borough residents are predominantly Native Alaskan Iñupiat people who have subsisted on the resources of the NPR-A for thousands of years.  Today, the people of the North Slope depend on a mixed economy comprised of subsistence activities and limited employment opportunities supported, in part, by responsible natural resource development and taxes levied on oil and gas infrastructure.  CPAI's Willow Project will provide an essential source of economic support for the Borough and its villages, allowing for continued investments in necessary civil infrastructure and improving access to vital subsistence resources through the environmentally-responsible development of identified oil and gas resources.

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - 1
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No. 3:20-cv-00290-SLG

Case 3:20-cv-00290-SLG   Document 76-3   Filed 03/26/21   Page 5 of 25

The Borough is entitled to intervention as of right under Rule 24(a) of the Federal Rules of Civil Procedure. As further explained below: (1) this motion is timely; (2) the Borough has protectable interests in the subject matter of this litigation; (3) the Borough's interests would be impaired by a judgment in favor of the Plaintiffs; and (4) none of the parties participating in this litigation can adequately represent the Borough's interests. Alternatively, the Borough requests intervention by permission under Rule 24(b) of the Federal Rules of Civil Procedure. For purposes of adjudicating this case, it is imperative that this Court hears from the people who live in the affected area and depend on the resources of the North Slope for their cultural, spiritual, and physical well-being and survival.

## II.     BACKGROUND

### A.     The NPR-A

Located on the North Slope of Alaska, the NPR-A includes approximately 23 million acres of federal mineral estate. Originally established in 1923,[1] the NPR-A was one of four naval petroleum reserves created to ensure that, "in time of war, the Navy's ships would have adequate petroleum supplies." H.R. Rep. No. 94-81, pt. I at 5 (1975). More recently, pursuant to the Naval Petroleum Reserves Production Act ("NPRPA"), as amended, 42 U.S.C. § 6501 et seq., the Secretary of the Interior is required to "conduct an expeditious program of competitive leasing of oil and gas in the [NPR-A]." 42 U.S.C. § 6506a(a). The Bureau of Land Management ("BLM") is the lead federal agency for

---

[1] Exec. Order No. 3797-A (Feb. 27, 1923).

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - 2
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No. 3:20-cv-00290-SLG

leasing, exploration, and development approvals. *See* 43 C.F.R. pts. 3000, 3130, 3150, 3160. As explained below, the Borough has jurisdiction over the planning, platting, permitting, and zoning of lands within its boundaries, including the NPR-A.

### B. The Willow Project

CPAI has progressively purchased oil and gas leases in the northeast area of the NPR-A. Following exploration and development of sites within this portion of the NPR-A, CPAI identified the Willow discovery during the 2015-2016 winter season. To initiate the permitting process, on May 10, 2018, CPAI submitted to the BLM a request to prepare an Environmental Impact Statement ("EIS") for the Willow Project's proposed development and operations. BLM undertook a comprehensive environmental review process to inform its decisions related to the permitting process for the Willow Project and to meet its obligations under the National Environmental Policy Act and other federal statutes. This extensive process included scoping, development of Draft, Supplement to the Draft, and Final EISs, multiple public meetings in North Slope communities, consideration of nearly 32,000 public comments (including 1,086 considered to be substantive submissions), and outreach and visits to a number of Alaska communities, including Nuiqsut and three other Borough communities. *See* BLM, Willow Master Development Plan Record of Decision at 9-11 (Oct. 2020) ("ROD"). The BLM also completed the appropriate consultations with the U.S. Fish and Wildlife Service and the National Marine Fisheries Service pursuant to Section 7 of the Endangered Species Act.

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - 3
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No. 3:20-cv-00290-SLG

The Borough participated as a cooperating agency in the development of the EIS. This included participating in scoping and coordination meetings—including a two-day workshop to develop stipulations for the Willow Project and alternatives for the EIS—and submitting detailed written comments on the Draft EIS and on the Supplement to the Draft EIS. Declaration of Mayor Harry K. Brower, Jr. ("Brower Decl.") ¶ 7.

Following the completion of this review process, the Secretary of the Interior published the ROD approving the Willow Project and determining where and under what conditions construction and operation of infrastructure proposed by CPAI may occur. The ROD also covers the associated issuance of subsequent authorizations—including permits and rights-of-way—for the construction and operation of the Willow Project based on the analysis contained in the Final EIS. However, it does not constitute the final approval for all actions associated with the Willow Project. *See* ROD at 1-2. The U.S. Army Corps of Engineers also has issued a record of decision and Clean Water Act Section 404 permit for the Willow Project.

Plaintiffs filed their Complaint on November 17, 2020 (ECF No. 1). The Court denied Plaintiffs' motion for preliminary injunction on February 1, 2021 (ECF No. 44), but subsequently granted preliminary injunctions pending appeal on February 6, 2021 (ECF No. 54). Following the U.S. Court of Appeals for the Ninth Circuit's order granting injunction pending appeal (Order, *Sovereign Iñupiat for a Living Arctic v. BLM*, No. 21-35085 (9th Cir. Feb. 13, 2021) (ECF No. 36)), the parties entered a joint stipulation in this Court agreeing that CPAI would not carry out gravel mining and gravel

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - 4
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No. 3:20-cv-00290-SLG

Case 3:20-cv-00290-SLG   Document 76-3   Filed 03/26/21   Page 8 of 25

road construction activities related to the Willow Project prior to December 1, 2021 (ECF No. 63). The continued delay of construction activities threatens to jeopardize the economic and social public benefits of the Willow Project for the Borough and its residents, the majority of whom are Native Alaskan Iñupiat. There is a need for timely resolution of this proceeding so that construction and development activities may proceed starting in the 2021-2022 winter season.

### C. The Borough

The Borough is the area-wide local government for the northern portion of the State of Alaska, serving as the regional government for eight villages. Brower Decl. ¶ 3. Its jurisdiction stretches from the United States-Canada border across to the western border of Alaska, and its coastline extends across the Beaufort and Chukchi Seas. *Id*. This includes the entire NPR-A and the four villages within it—Nuiqsut, Atqasuk, Utqiaġvik, and Wainwright. *Id*.

As a Home Rule Borough with authority analogous to, or greater than, that of county governments in other states, the Borough is a political subdivision and municipal corporation incorporated under the laws of the State of Alaska with "all legislative powers not prohibited by law or charter." *See* Alaska Stat. § 29.04.010. As such, the Borough has authority over the planning, platting, permitting, and zoning of lands within its boundaries, and it is responsible for, or is engaged in, environmental protection and wildlife management. Brower Decl. ¶ 4.

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - 5
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No. 3:20-cv-00290-SLG

Among the Borough's Home Rule powers is the statutory authority to tax infrastructure for oil and gas development. *See* Alaska Stat. §§ 43.56.010(b), 29.45.080(a); NSB Ordinance § 3.27.050(A). The Borough's primary source of revenue derives from taxes levied on oil and gas infrastructure—for example, in 2016, the Borough received approximately $373 million in oil and gas property taxes, accounting for 97% of the $386 million in total property taxes collected by the Borough that year. Brower Decl. ¶ 8. In 2017, oil and gas property taxes accounted for 95% of the Borough's $392 million in total property tax receipts. *Id.* These tax revenues provide significant economic benefit to the Borough and contribute funds that enable the Borough to provide essential services to its eight communities and to employ many of its residents. *Id.* ¶ 9.

The Borough has a vested interest in maintaining appropriate protections for local wildlife for the benefit of its residents. Over 74% of Borough residents are Native Alaskan Iñupiat. *Id*. ¶ 5. The Iñupiat and other indigenous peoples of the region have depended on subsistence resources of the NPR-A's lands and waters for their physical health, cultural well-being, and survival for thousands of years. *Id.* ¶¶ 5, 14. The Borough's Department of Wildlife Management ("Wildlife Department") promotes sustainable subsistence harvests and monitors the population and health of fish and wildlife species through research, cooperation, and collaboration with Alaska Native subsistence hunters, federal and state agencies, researchers, industry partners, consultants, and nonprofit organizations. *Id.* ¶ 15. The Wildlife Department is actively engaged in

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - 6
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No. 3:20-cv-00290-SLG

research and management efforts related to bowhead whales, polar bears, brown bears, caribou, muskoxen, Steller's and spectacled eiders, and other species, including migratory birds. *Id.* As such, the Borough, and its residents, have unique insights into the best scientific data available regarding the status and habitat of the NPR-A's various species and the threats potentially impacting those species. *Id.*

In addition, responsible resource development is essential to the vitality of North Slope communities and residents, and the Borough seeks to direct appropriate resource development on the North Slope in a manner that promotes the public health, safety, welfare, and economic stability of Borough residents and communities while mitigating the impacts of development activity on wildlife and the natural environment. *Id.* ¶ 12. Because the Borough has authority over the planning, platting, permitting, and zoning of lands within its jurisdiction, certain development activities undertaken for the Willow Project will require Borough permits or other authorizations. The Borough's Department of Planning and Community Services has successfully permitted oil and gas exploration, development, and production, among other activities, on the North Slope for over 40 years. *Id.* These activities have achieved significant mitigation measures to protect the North Slope's residents and environment and yielded important benefits for the Borough's communities, while facilitating, when appropriate, oil and gas development. *Id.* ¶¶ 3, 12.

The Borough also plays a critical role in developing and providing community infrastructure in its villages and for its residents. In fulfilling its responsibility to deliver

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - 7
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No. 3:20-cv-00290-SLG

Case 3:20-cv-00290-SLG   Document 76-3   Filed 03/26/21   Page 11 of 25

essential services to its communities—including education, healthcare, social services, utilities, public safety, and emergency services—the Borough must create the necessary infrastructure to support these activities. *Id.* ¶ 9. Such infrastructure includes roads, hospitals and healthcare centers, schools, drinking water, and utility systems, and provision of necessary maintenance. It also includes aircraft and crew that conduct regular medevac and search and rescue operations throughout the North Slope of Alaska. *Id.* Given the geographic isolation of the Borough's villages, and limited economic opportunities in the region, industrial development activities, such as the Willow Project, promote the development of such community infrastructure and provide benefits to Borough residents through increased job opportunities in a part of the country that struggles with employment due to its remote nature. *Id.* ¶ 18.

## III. ARGUMENT

The Borough has a great deal at stake in this litigation and should be granted intervention as of right under Rule 24(a) of the Federal Rules of Civil Procedure to defend its interests or, in the alternative, permissive intervention under Rule 24(b).

### A. The Borough Is Entitled to Intervene As of Right.

The Ninth Circuit has established a four-part test to determine whether a party should be permitted to intervene as of right under Rule 24(a): (1) the motion for intervention must be timely; (2) the movant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the movant must be so situated that the disposition of the action may as a practical matter

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - 8
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No. 3:20-cv-00290-SLG

Case 3:20-cv-00290-SLG   Document 76-3   Filed 03/26/21   Page 12 of 25

impair or impede its ability to protect that interest; and (4) the movant's interest must be inadequately represented by the existing parties to the action. *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc) (citation omitted). The Ninth Circuit repeatedly has directed that these requirements are to be broadly interpreted in favor of intervention. *See, e.g.*, *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016) (citation omitted); *see also Wilderness Soc'y*, 630 F.3d at 1179 ("In evaluating whether Rule 24(a)(2)'s requirements are met, we normally follow practical and equitable considerations and construe the Rule broadly in favor of proposed intervenors. We do so because a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts.") (internal citations and quotation marks omitted). As discussed below, the Borough satisfies each of the requirements for intervention as of right.

### 1. The Motion Is Timely.

In considering timeliness of intervention, Ninth Circuit courts use a totality of the circumstances test focusing on three primary factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *L.A. Unified Sch. Dist.*, 830 F.3d at 854 (citation omitted).

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - 9
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No. 3:20-cv-00290-SLG

This litigation is in its preliminary stages. Plaintiffs filed their Complaint on November 17, 2020.[2] During this time, the Borough Assembly was deliberating the approval of a rezone necessary for local authorization for development of the Willow Project to proceed. *See* Brower Decl. ¶ 20. The Borough Assembly approved the required rezone authorization on January 15, 2021. *Id.* The Plaintiffs filed an Amended Complaint on January 20, 2021 (ECF No. 36), and Federal Defendants filed their Answer on March 12, 2021 (ECF No. 74). The Borough has acted without delay to participate in this litigation and seek intervention.

No party will be prejudiced by the Borough's intervention. The Borough recognizes the time-sensitive nature of its intervention, given the desire for judicial resolution prior to the 2021-2022 winter construction season, and the Borough will abide by any case management orders entered by this Court and the briefing requirements set forth in the local rules.

Courts routinely find that intervention at this stage of litigation is timely. *See, e.g.*, *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (intervention timely when filed less than three months after complaint and less than two

---

[2] The Court denied Plaintiffs' motion for preliminary injunctions on February 1, 2021 (ECF No. 44). Subsequently, the Court granted preliminary injunctions pending appeal on February 6, 2021 (ECF No. 54). The Ninth Circuit then granted an injunction pending appeal on February 13, 2021. Order, *Sovereign Iñupiat for a Living Arctic v. BLM*, Case No. 21-35085 (9th Cir. Feb. 13, 2021) (ECF No. 36). The Borough filed an amicus brief at the Ninth Circuit opposing plaintiffs-appellants requested injunction on February 10, 2021.

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - 10
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No. 3:20-cv-00290-SLG

weeks after defendants filed answer).  The Borough therefore satisfies the timeliness

criterion for intervention, and there is no prejudice to existing parties.

> ## 2. The Borough Has Significantly Protectable Interests in the Subject Matter of This Case.

A movant for intervention has significantly protectable interests when "(1) [the

applicant] asserts an interest that is protected under some law, and (2) there is a

'relationship' between [the applicant's] legally protected interest and the plaintiff's

claims." *United States v. Sprint Commc'ns, Inc.*, 855 F.3d 985, 991 (9th Cir. 2017)

(citation omitted).  In keeping with its liberal policy in favor of intervention, the Ninth

Circuit has "held that Rule 24(a)(2) does not require a specific legal or equitable interest

. . . and noted that the 'interest' test is primarily a practical guide to disposing of lawsuits

by involving as many apparently concerned persons as is compatible with efficiency and

due process." *Wilderness Soc'y*, 630 F.3d at 1179 (citation and internal quotations

omitted).  The "relationship" requirement is satisfied "if the resolution of the plaintiff's

claims actually will affect the applicant." *United States v. City of Los Angeles*, 288 F.3d

391, 398 (9th Cir. 2002) (citation omitted); *California ex rel. Lockyer v. United

States*, 450 F.3d 436, 441 (9th Cir. 2006) (movant "will suffer a practical impairment of

its interests as a result of the pending litigation").

The Borough has significant economic, regulatory, and community development

interests in the Willow Project at issue in this litigation.  As noted above, the Borough has

statutory authority to tax real or personal property within its jurisdiction, including

infrastructure for oil and gas development.  *See* Alaska Stat. §§ 43.56.010(b),

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - 11
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No.
3:20-cv-00290-SLG

29.45.080(a); NSB Ordinance § 3.27.050(A). Taxes levied on oil and gas infrastructure are the Borough's primary source of revenue. Brower Decl. ¶ 8. Development of the Willow Project will include the construction of new oil and gas infrastructure, which will in turn support the continued generation of critical tax revenues from that infrastructure for the Borough. *Id*. ¶ 10. The BLM estimates that, over the 30-year life of the development, the Willow Project will provide $1.23 billion in Borough property tax revenues. *Id*. These tax revenues will provide a significant economic benefit and will help allow the Borough to continue to employ many of its residents and provide essential services to its communities, such as education, health, social, infrastructure, utilities, and emergency services. *See id*. ¶ 9. Further, the Willow Project should generate $2.6 billion in royalty revenue sharing available to fund the NPR-A Impact Grant Program, which administers grants from federal royalties, which are used to offset development impacts or improve communities impacted by development. Such grants are available to North Slope Borough municipalities, including both the Borough and incorporated cities. *Id*. ¶ 10. These grants provide significant benefit to the local communities. Over the past ten years, the Borough has received almost $30 million in NPR-A Impact Grants, which it used for services including school counselors, comprehensive planning for communities, and land management and permitting. *Id*. Separately, Nuiqsut received nearly $6.5 million in NPR-A Impact Grants, which have been used to support general government operations, youth center operations and maintenance, a boat ramp, and community center maintenance. *Id*.

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - 12
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No. 3:20-cv-00290-SLG

The Borough also has authority for the planning, zoning, and permitting of activities on lands within its jurisdiction. Certain development activities undertaken for the Willow Project will require Borough permits or other authorizations. *Id*. ¶ 13. The Borough has an interest in exercising its regulatory authority to ensure that development within the NPR-A is conducted responsibly and in accordance with appropriate mitigation measures, zoning requirements, and stipulations that will help protect the environment, natural resources, and wildlife. *Id*. ¶ 22.

In addition, the Borough has a protectable interest in its wildlife management role and its responsibility to promote responsible resource development in a manner that protects the subsistence rights and resources of its residents. *Id*. ¶ 14. The region's Alaska Native population has depended on the subsistence resources of the North Slope's lands and waters for thousands of years. The Borough fulfills its role in protecting these subsistence and other wildlife resources by engaging in independent scientific research and collaborative conservation and management efforts with Alaska Native subsistence hunters, federal and state agencies, industry partners, and others. *Id.* ¶ 15. The Borough would exercise its management and regulatory authorities and employ its substantive biological and traditional expertise with regard to the Willow Project in a manner that protects cultural and subsistence resources of its residents while promoting and ensuring responsible resource and economic development. *Id.*

Finally, the Borough has a protectable interest in the infrastructure investments and community development activities that will be generated by the Willow Project. *Id.*

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - 13
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No. 3:20-cv-00290-SLG

Case 3:20-cv-00290-SLG   Document 76-3   Filed 03/26/21   Page 17 of 25

¶ 17.  Exploration and development related to the Willow Project will require new roads and local infrastructure in and around the village of Nuiqsut.  On the North Slope, the additional access to subsistence areas and connectivity provided by roads is viewed by many residents as a significant benefit.  Road connectivity associated with the Willow Project would benefit Borough residents by reducing air traffic and increasing subsistence and recreational access, as the Willow Project support facilities would include road turnouts with subsistence access ramps and boat ramps for subsistence use. *Id.*  Additionally, these new roads would assist in the annual construction of the Community Winter Access Trail between Nuiqsut and Utqiaġvik and may reduce associated costs.  *Id.*

Exploration and development activities related to the Willow Project also will increase local employment opportunities for residents of Nuiqsut, Utqiaġvik, and other Borough villages, which are currently limited due to the villages' isolated locations.  *Id.* ¶ 18.  Even a small number of jobs associated with the Willow Project going to locals would positively impact the local labor force.  For example, local Alaska Native corporation Nanuq Inc. (a wholly owned subsidiary of Kuukpik Corporation, Nuiqsut's local village corporation established pursuant to the Alaska Native Claims Settlement Act ("ANCSA") of 1971), employs Nuiqsut residents and serves as the Willow Project's ice road construction contractor.  Staking and survey work for the ice road is performed by UMIAQ Design, LLC (a subsidiary of Ukpeaġvik Iñupiat Corporation, Utqiaġvik's local ANCSA village corporation).  CPAI's use of subsidiaries of local Alaska Native

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - 14
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No. 3:20-cv-00290-SLG

Case 3:20-cv-00290-SLG   Document 76-3   Filed 03/26/21   Page 18 of 25

corporations benefits not only the employees of the companies, but also the local Alaska Native shareholders of these companies. *Id.* ¶ 19.

Accordingly, the Borough has significantly protectable interests relating to the Willow Project, including the Borough's economic interest in potential tax revenues of oil and gas development infrastructure, its permitting authority, its wildlife expertise and management responsibilities, and its ability to provide employment opportunities and community infrastructure services to its constituents. The Borough therefore satisfies the interest criterion for intervention.

### 3. Judgment in Favor of Plaintiffs Would Impair the Borough's Interests.

For intervention as of right, the movant must be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2). To satisfy this requirement, the movant need only show that the disposition of the action "'may' impair rights 'as a practical matter' rather than whether the [disposition] will 'necessarily' impair them." *City of Los Angeles*, 288 F.3d at 401 (citing Fed. R. Civ. P. 24(a)(2)). Thus, if a movant may be affected "in a practical sense by the determination made in an action, [it] should, as a general rule, be entitled to intervene." *Citizens for Balanced Use*, 647 F.3d at 898 (citing Rule 24 advisory committee's note).

The Borough's interests related to the Willow Project will be substantially impaired if Plaintiffs succeed in their challenge. If the authorizations for the Willow Project are invalidated and vacated, as Plaintiffs request, the Borough stands to lose

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - 15
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No. 3:20-cv-00290-SLG

hundreds of millions of dollars of lost tax revenue on oil and gas infrastructure and in NPR-A Impact Grants. Brower Decl. ¶ 21. Such an outcome would have a significant negative effect on the region's economy and the Borough's ability to provide essential government and other functions and support for the health and well-being of its residents. *Id.*

Additionally, without the Willow Project, the Borough and its residents will not receive the additional infrastructure and community benefits associated with oil and gas development. *Id*. ¶ 17. The residents of Nuiqsut and Utqiaġvik will not see the benefits of road connectivity, such as increased access for subsistence activities. *Id.* Plaintiffs' requested relief also will deny Borough residents new opportunities to obtain related jobs in a geographic area that struggles with employment opportunities. *Id.* ¶¶ 18, 23.

Disposition of this case also could impair the Borough's interest in planning, zoning, and permitting activities and managing wildlife on lands within its jurisdiction in a manner that is protective of the environment, natural resources, and its residents' subsistence way of life. *Id.* ¶ 22. Plaintiffs' requested relief would deny the Borough its regulatory authority to require appropriate mitigation measures, zoning requirements, and stipulations within any Borough-issued permits to ensure that the economic and social benefits of oil and gas development associated with the Willow Project are achieved in an environmentally responsible manner. *Id.*

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - 16
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No. 3:20-cv-00290-SLG

Case 3:20-cv-00290-SLG   Document 76-3   Filed 03/26/21   Page 20 of 25

Because disposition of this case in favor of Plaintiffs would impair the Borough's economic, regulatory, and community development interests, the Borough satisfies the impairment criterion for intervention.

### 4. The Borough's Interests Are Not Adequately Represented by Existing Parties to the Litigation.

The burden of demonstrating inadequate representation is minimal, and the Borough needs only show that its interests are sufficiently different from the existing parties such that its representation "may be" inadequate. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citation omitted). The Ninth Circuit has established a three-part test to evaluate adequacy of representation:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Citizens for Balanced Use*, 647 F.3d at 898 (citation omitted). Federal Defendants and Intervenor-Defendant CPAI cannot adequately represent the Borough's economic, regulatory, or community interests in this case.

While the ultimate objective of the Borough, Federal Defendants, and CPAI is to defend the Willow Project, the parties' specific interests are not the same. Federal Defendants have a broad responsibility to represent the nationwide public interest in the NPR-A, must weigh competing interests, and cannot defend the interests of beneficiaries of the agency decision. *See, e.g.*, *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) (abrogated on other grounds) (stating that the

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - 17
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No. 3:20-cv-00290-SLG

"government must present the broad public interest, not just the economic concerns of the [proposed intervenors]") (citation omitted). While CPAI seeks to defend its property and economic interests in the Willow Project, such interests are inherently distinct from those of the Borough.

As the representative area-wide local government, the Borough has a unique responsibility to protect and promote appropriate economic development in the region, and to regulate lands and wildlife within its jurisdiction in a manner that promotes the public health, safety, welfare, and economic stability of its residents and communities. Brower Decl. ¶ 25. Unlike Federal Defendants and CPAI, the Borough is specifically concerned with its ability to collect taxes on oil and gas development infrastructure, receive NPR-A Impact Grants, regulate development within its jurisdiction, provide employment opportunities and essential services for its communities, and increase and protect subsistence access for its Alaska Native residents. *Id.* Given these distinct interests, there is no guarantee that Federal Defendants or CPAI "will undoubtedly make all [of the Borough's] arguments." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (citation omitted).

Additionally, the Borough can offer a unique perspective on the Willow Project area and its resources. Brower Decl. ¶ 26. Nearly three-quarters of Borough residents are Native Alaskan Iñupiat. *Id.* ¶¶ 5, 26. The Iñupiat and other indigenous peoples of the region have strong cultural and subsistence ties to the Willow Project area, as they have occupied the NPR-A lands and have depended on the subsistence resources of the North

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - 18
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No. 3:20-cv-00290-SLG

Case 3:20-cv-00290-SLG   Document 76-3   Filed 03/26/21   Page 22 of 25

Slope's lands and waters for their physical health, cultural well-being, and survival for thousands of years. *Id*. These interests are not adequately represented by the existing parties to this litigation.

Because Federal Defendants and Intervenor-Defendant CPAI do not share the Borough's specific interests and obligations—particularly those regarding the economic, regulatory, and community development benefits of the Willow Project—the Borough's interests are not adequately represented by the existing parties. Thus, the Borough satisfies the final criterion for intervention as of right.

## B.    In the Alternative, the Borough Satisfies the Standard for Permissive Intervention.

If the Court does not grant the Borough's intervention as a matter of right, the Borough alternatively requests that the Court grant it permissive intervention under Rule 24(b). Permissive intervention is available, upon timely motion, to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Ninth Circuit has explained that permissive intervention should be granted when there is: "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (collecting cases).

The Borough meets the requirements for permissive intervention. First, as this is a federal question case, the independent jurisdictional grounds requirement does not apply because the Borough is not raising new claims and, thus, there is no concern about any

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - 19
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No. 3:20-cv-00290-SLG

"enlargement of federal jurisdiction." *Id.* at 844.  Second, as explained above, the

Borough's motion is timely and will neither delay these proceedings nor prejudice the

existing parties.  Third, the defenses that the Borough intends to raise in support of the

Willow Project share common questions of law and fact with the claims and defenses

already at issue in this litigation.  Accordingly, should this Court deny the Borough's

motion to intervene as of right, permissive intervention should be granted.

## IV.    CONCLUSION

For the foregoing reasons, the Borough respectfully requests that the Court grant

its motion to intervene as of right under Rule 24(a), or, in the alternative, permissive

intervention under Rule 24(b).

DATED this 26th day of March, 2021.

/s/  Tyson C. Kade
Tyson C. Kade, D.C. Bar # 1018014
*Pro Hac Vice Pending*
Jonathan D. Simon, Alaska Bar # 0911069
Melinda L. Meade Meyers, Alaska Bar # 2006053
VAN NESS FELDMAN, LLP
1050 Thomas Jefferson Street, NW
Seventh Floor
Washington, DC  20007
Tel.: 202.298.1800
Fax: 202.338.2416
Email: tck@vnf.com
         jxs@vnf.com
         mmeademeyers@vnf.com

*Counsel for Movant North Slope Borough*

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - 20
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No.
3:20-cv-00290-SLG

Case 3:20-cv-00290-SLG   Document 76-3   Filed 03/26/21   Page 24 of 25

## CERTIFICATE OF COMPLIANCE

This document contains 4,879 words, excluding the items exempted by Local Civil Rule 7.4(a)(4). Counsel relies on the word count of the computer program used to prepare this brief. This document complies with the word limit of Local Civil Rule 7.4(2).

DATED this 26th day of March, 2021.

/s/ Tyson C. Kade
Tyson C. Kade

NORTH SLOPE BOROUGH'S MEM. IN SUPP. OF MOT. TO INTERVENE - 21
*Sovereign Iñupiat for a Living Arctic, et al., v. Bureau of Land Mgmt., et al.*, Case No. 3:20-cv-00290-SLG

Case 3:20-cv-00290-SLG   Document 76-3   Filed 03/26/21   Page 25 of 25