TREG R. TAYLOR
ATTORNEY GENERAL

John M. Ptacin (Alaska Bar No. 0412106)
Chief Assistant Attorney General
Ronald W. Opsahl (Alaska Bar No. NA20118)
Senior Assistant Attorney General
Alaska Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5232
Facsimile: (907) 276-3697
Email: john.ptacin@alaska.gov
      ron.opsahl@alaska.gov

*Attorneys for the State of Alaska*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Sovereign Iñupiat for a Living Arctic, *et al.* | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| Bureau of Land Management, *et al.*, | ) **Case No. 3:20-cv-00290-SLG** |
| Defendants, | ) ) |
| and | ) ) |
| ConocoPhillips Alaska, Inc., North Slope Borough, and State of Alaska, | ) ) ) |
| Intervenor-Defendants. | ) ) ) |
| | ) |
| Center for Biological Diversity, *et al.*, | ) ) |
| Plaintiffs, | ) |

|  |  |  |
|---|---|---|
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| Bureau of Land Management, *et al.*, | ) | **Case No. 3:20-cv-00308-SLG** |
|  | ) |  |
| Defendants, | ) |  |
|  | ) |  |
| and | ) |  |
|  | ) |  |
| ConocoPhillips Alaska, Inc., | ) |  |
| North Slope Borough, and | ) |  |
| State of Alaska, | ) |  |
|  | ) |  |
| Intervenor-Defendants. | ) |  |
|  | ) |  |

## STATE OF ALASKA'S COMBINED RESPONSE TO PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT[1]

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................ 4

NOTE ON ADMINISTRATIVE RECORD CITATIONS ............................ 8

STATE OF ALASKA'S COMBINED RESPONSE TO PLAINTIFFS'
MOTIONS FOR SUMMARY JUDGMENT ...................................... 9

INTRODUCTION ...................................................................................... 9

FACTUAL BACKGROUND ...................................................................... 10

STANDARD OF REVIEW .......................................................................... 10

ARGUMENT .............................................................................................. 12

---

[1] In the interest of judicial efficiency, the State of Alaska has combined its responses to Plaintiffs Sovereign Iñupiat for a Living Arctic, *et al.*'s Opening Brief for Summary Judgement (ECF No. 95, Case No. 0290) and to Plaintiffs Center for Biological Diversity, *et al.*'s Principal Brief under Local Rule 16.3(c)(1) (ECF No. 92, Case No. 0308) into this single brief, with identical copies being filed in each case. References to each plaintiffs' groups' arguments are clearly identified by brief herein.

*Sovereign Iñupiat for a Living Arctic v. BLM*     Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*     Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.     Page 2 of 36

I.    BLM and the Corps fully satisfied the requirements of NEPA in
      approving the Willow Master Development Plan ............................... 12

      A.    Plaintiffs' NEPA claims are barred by the statute of
            limitations .................................................................................... 13

      B.    BLM and the Corps satisfied NEPA's "hard look"
            requirement.................................................................................... 13

            1.    BLM and the Corps obtained adequate project design and
                  baseline data necessary to take a "hard look" ............... 14

            2.    BLM adequately analyzed the Willow Project's potential
                  impacts to the Teshekpuk Caribou Herd........................ 16

      C.    BLM and the Corps satisfied NEPA's cumulative effects analysis
            requirement.................................................................................... 17

      D.    BLM adequately analyzed greenhouse gas emissions .............. 19

      E.    BLM considered a reasonable range of alternatives ................. 21

II.   The Corps fully complied with the Clean Water Act in issuing its
      Section 404 Permit ........................................................................... 23

      A.    The Willow Project will not cause significant degradation ...... 23

      B.    The Corps properly concluded that impacts from the Willow
            Project will be adequately mitigated ......................................... 23

III.  The FWS fully complied with the ESA in issuing
      its Biological Opinion........................................................................ 27

      A.    FWS findings that the Willow Project is "not likely to jeopardize"
            the continued existence of polar bears and "not likely to adversely
            affect" designated critical habitat were appropriate.................. 29

      B.    The BiOp's take findings are reasonably supported ................. 31

IV.   Because the BiOp is lawful, the Center's claim against BLM must be
      rejected .............................................................................................. 32

V.    Plaintiffs' requested relief should be denied ....................................... 32

      CONCLUSION ................................................................................. 33

*Sovereign Iñupiat for a Living Arctic v. BLM*          Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*                Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.          Page 3 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 3 of 36

Certificate of Compliance with Type-Volume Limit ..................................... 35

Certificate of Service ......................................................................... 36

## TABLE OF AUTHORITIES

### CASES

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*,
    988 F.2d 146 (D.C. Cir. 1993) ............................................... 33

*Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife Serv.*,
    273 F.3d 1229 (9th Cir. 2001) ................................................ 28, 29

*Arizona ex rel. Darwin v. U.S. Env't Prot. Agency*,
    852 F.3d 1148 (9th Cir. 2017) ................................................ 11

*Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*,
    462 U.S. 87 (1983) .............................................................. 11, 12

*Cal. Cmtys. Against Toxics v. U.S. Env't Prot. Agency*,
    688 F.3d 989 (9th Cir. 2012) ................................................. 32-33

*California v. Block*,
    690 F.3d 753 (9th Cir. 1982) ................................................. 21, 22

*City of Carmel-by-the-Sea v. U.S. Dep't of Transp.*,
    123 F.3d 1142 (9th Cir. 1997) ............................................... 21

*City of Tenakee Springs v. Clough*,
    915 F.2d 1308 (9th Cir. 1990) ............................................... 17-18

*Conservation Cong. v. U.S. Forest Serv.*,
    720 F.3d 1048 (9th Cir. 2013) ............................................... 28

*Ctr. for Biological Diversity v. Bernhardt*,
    982 F.3d 723 (9th Cir. 2020) ................................................. 20, 29, 32

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*,
    807 F.3d 1031 (9th Cir. 2015) ............................................... 11

*Dep't of Transp. v. Public Citizen*,
    541 U.S. 752 (2004) ............................................................ 15, 21

*Sovereign Iñupiat for a Living Arctic v. BLM*          Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*                Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.          Page 4 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 4 of 36

*Env't Prot. Info. Ctr. v. U.S. Forest Serv.*,
    451 F.3d 1005 (9th Cir. 2006) ............................................................ 20

*Friends of Endangered Species, Inc. v. Jantzen*,
    760 F.2d 976 (9th Cir. 1985) .............................................................. 11

*Friends of the Earth v. Hintz*,
    800 F.2d 822 (9th Cir. 1986) .............................................................. 23

*Friends of the Se's Future v. Morrison*,
    153 F.3d 1059 (9th Cir. 1998) ............................................................ 22

*Headwaters, Inc. v. Bureau of Land Mgmt.*,
    914 F.2d 1174 (9th Cir. 1990) ............................................................ 22

*In re Consol. Salmonid Cases*,
    791 F. Supp. 2d 802 (E.D. Cal. 2011),
    *rev'd in part on other grounds sub nom.*
    *San Luis & Delta-Mendota Water Auth. v. Locke*,
    776 F.3d 971 (9th Cir. 2014) .............................................................. 10

*Inland Empire Pub. Lands Council v. U.S. Forest Serv.*,
    88 F.3d 754 (9th Cir. 1996) ................................................................ 13

*Kern v. U.S. Bureau of Land Mgmt.*,
    284 F.3d 1062 (9th Cir. 2002) ............................................................ 20

*Lands Council v. McNair*, 537 F.3d 981 (9th Cir. 2008),
    *overruled on other grounds by*
    *Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................... 11, 12, 14

*Marsh v. Or. Nat. Res. Council*,
    490 U.S. 360 (1989) ............................................................... 11, 12

*Or. Env't Council v. Kunzman*,
    817 F.2d 484 (9th Cir. 1987) ......................................... 14, 15, 16, 17

*Or. Nat. Res. Council Fund v. Brong*,
    492 F.3d 1120 (9th Cir. 2007) ............................................................ 18

*Robertson v. Methow Valley Citizens Council*,
    490 U.S. 332 (1989) ........................................................................... 12

*Sovereign Iñupiat for a Living Arctic v. BLM*    Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*    Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.    Page 5 of 36

Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 5 of 36

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
    747 F.3d 581 (9th Cir. 2014) ............................................................... 10, 11, 32

*Save Lake Washington v. Frank*,
    641 F.2d 1330 (9th Cir. 1981) ............................................................... 22

*Se. Alaska Conservation Council v. U.S. Forest Serv.*,
    443 F. Supp. 3d 995 (D. Alaska 2020) ................................................. 14

*Sierra Club v. Bosworth*,
    510 F.3d 1016 (9th Cir. 2007) ............................................................... 13

*Sierra Club v. U.S. Dep't of Energy*,
    867 F.3d 189 (D.C. Cir. 2017) ............................................................... 20, 21

*Stein v. Barton*,
    740 F. Supp. 743 (D. Alaska 1990) ...................................................... 14, 15

## <u>STATUTES</u>

Administrative Procedure Act, 5 U.S.C. §§ 701-706 ...................................... 10
    5 U.S.C. § 706(2)(A) ............................................................................ 11

16 U.S.C. § 1536(b) ........................................................................................ 28

16 U.S.C. § 1536(b)(3) .................................................................................... 28

16 U.S.C. § 1536(b)(4) .................................................................................... 28, 29

16 U.S.C. § 1536(o) ........................................................................................ 28

33 U.S.C. § 1344(d) ........................................................................................ 23

National Environmental Policy Act, 42 U.S.C. §§ 4321-4370dd .................. 12
    42 U.S.C. § 4332(2)(C) ........................................................................ 12, 13, 14
    42 U.S.C. § 4332(2)(E) ......................................................................... 21

42 U.S.C. § 6506a(n)(1) ................................................................................. 13

## <u>AGENCY RULES AND REGULATIONS</u>

33 C.F.R. Parts 320-329 ................................................................................. 23

40 C.F.R. Part 230 .......................................................................................... 23

*Sovereign Iñupiat for a Living Arctic v. BLM*    Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*    Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.    Page 6 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 6 of 36

40 C.F.R. § 1500.1(b) (2019) ............................................................ 21

40 C.F.R. § 1502.1 ........................................................................... 14

40 C.F.R. § 1502.22 (2019) .............................................................. 20

40 C.F.R. § 1502.24 (2019) .............................................................. 21

40 C.F.R. § 1508.7 ........................................................................... 18

50 C.F.R. § 402.12(k) ...................................................................... 27

50 C.F.R. § 402.14(a) ...................................................................... 27

50 C.F.R. § 402.14(g) ...................................................................... 28

50 C.F.R.§ 402.14(h) ....................................................................... 28

50 C.F.R. § 402.14(i) ....................................................................... 28

50 C.F.R. § 402.14(i)(4) ................................................................... 29

50 C.F.R. § 402.16(a) ...................................................................... 29

## <u>OTHER MATERIALS</u>

Alaska Wetlands Initiative Summary Report (May 13, 1994),
    *available at* archive.epa.gov/water/archive/web/pdf/alaska.pdf .......... 25

Clarification of the Clean Water Act Section 404 Memorandum of Agreement
    on Mitigation (Jan. 11, 1992) ................................................ 25

Memorandum of Agreement between the Department of the Army and the
    Environmental Protection Agency Concerning Mitigation Sequence for
    Wetlands in Alaska under Section 404 of the Clean Water Act
    (June 15, 2018), *available at* https://www.epa.gov/sites/production/files
    /2018-06/documents/epa_army_moa_alaska_mitigation_cwa_404_
    06-15-2018_0.pdf ................................................................ 26, 27

Statements on the Mitigation Sequence and No Net Loss of Wetlands in
    Alaska (May 13, 1994), *available at* archive.epa.gov/water/archive/web
    /pdf/alaska.pdf, 39-47 ........................................................ 25-26

*Sovereign Iñupiat for a Living Arctic v. BLM*    Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*    Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.    Page 7 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 7 of 36

## NOTE ON ADMINISTRATIVE RECORD CITATIONS

The federal agencies have lodged multiple Administrative Records corresponding to the various agency actions challenged in these related cases. For this brief, documents cited from the U.S. Bureau of Land Management's March 12, 2021 Administrative Record, as supplemented on April 9, 2021, for the Willow Master Development Plan ("Willow Project") are in the form "BLM ARxxxxxx" where "BLM AR" signifies the Bureau of Land Management's Administrative Record and "xxxxxx" is the unique six-digit Bates page number in the upper left-hand corner of each page. Individual documents are also cited herein in the form "BLM AR Doc. xxxx" where "BLM AR" signifies the Bureau of Land Management's Administrative Record and "Doc. xxxx" indicates the unique file number assigned to the document, as provided on the Bureau of Land Management's Administrative Record Index. Documents cited from the U.S. Fish and Wildlife Service March 12, 2021 Administrative Record, as supplemented on April 9, 2021, for the Biological Opinion for the Willow Project are in the form "FWS ARxxxxxx," where "FWS AR" signifies the Fish and Wildlife Service's Administrative Record and "xxxxxx" is the unique six-digit Bates page number in the lower right-hand corner of each page. Documents cited from the U.S. Army Corps of Engineers' March 12, 2021 Administrative Record, as supplemented on April 9, 2021, for the Clean Water Act permit application for the Willow Project are in the form "Corps ARxxxxxx" where "Corps AR" signifies the Corps of Engineers Administrative Record and "xxxxxx" is the unique six-digit Bates number in the lower right-hand corner of each page.

*Sovereign Iñupiat for a Living Arctic v. BLM*          Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*          Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.          Page 8 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 8 of 36

## STATE OF ALASKA'S COMBINED RESPONSE TO
## PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT

## INTRODUCTION

Plaintiffs in these related cases collectively challenge the Bureau of Land Management's ("BLM") approval of the Willow Master Development Plan ("Willow Project"), which authorizes oil and gas development from up to five drilling sites in the northeastern portion of the National Petroleum Reserve–Alaska. *See* BLM, Willow Master Development Plan, Record of Decision (Oct. 2020) ("ROD") (BLM AR Doc. 2817); BLM, Willow Master Development Plan Environmental Impact Statement (Aug. 2020) ("FEIS") (BLM AR Doc. 2813). Plaintiffs in each case present several legal theories under various environmental and natural resources statutes. The *Sovereign Iñupiat for a Living Arctic* plaintiffs ("SILA") allege that the FEIS and ROD are deficient under the National Environmental Policy Act ("NEPA") and the Federal Land Policy Management Act ("FLPMA"). *See* SILA plaintiffs' Opening Brief for Summary Judgement (ECF No. 95, Case No. 0290) ("SILA Br."). Moreover, SILA challenges the U.S. Fish & Wildlife Service's ("FWS") Biological Opinion ("BiOp") issued under the Endangered Species Act ("ESA") in relation to the Willow Master Development Plan and the U.S. Army Corps of Engineers ("Corps") approval of a dredge and fill permit under Section 404 of the Clean Water Act ("CWA"). *Id.* The *Center for Biological Diversity* plaintiffs ("Center") limit their challenge to claims under NEPA and the ESA against BLM and FWS. *See* Center plaintiffs' Principal Brief under Local Rule 16.3(c)(1) (ECF No. 92, Case No. 0308) ("Center Br."). All plaintiffs seek to have the Willow Master

*Sovereign Iñupiat for a Living Arctic v. BLM*          Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*                Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.          Page 9 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 9 of 36

Development Plan, and related decisional documents, set aside under the Administrative Procedure Act. Plaintiffs' claims lack merit and their requested relief should be denied.

## FACTUAL BACKGROUND

The State adopts the statements of facts provided in federal defendants' and other intervenor-defendants' response briefs.

## STANDARD OF REVIEW

In this case, the Court is reviewing the propriety of an agency action pursuant to the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. Consequently, the requirements for summary judgment differ somewhat. As one court has explained:

> A court conducting APA judicial review may not resolve factual questions, but instead determines "whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." "[I]n a case involving review of a final agency action under the [APA] . . . the standard set forth in Rule 56(c) does not apply because of the limited role of a court in reviewing the administrative record." In this context, summary judgment becomes the "mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."

*In re Consol. Salmonid Cases*, 791 F. Supp. 2d 802, 818-819 (E.D. Cal. 2011) (internal citations omitted), *rev'd in part on other grounds sub nom. San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971 (9th Cir. 2014).

Review of agency action under the APA is "highly deferential." *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014). Under the APA, courts are to uphold agency action unless it is "arbitrary, capricious, an abuse of

*Sovereign Iñupiat for a Living Arctic v. BLM*　　　　Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*　　　　　　Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.　　Page 10 of 36
Case 3:20-cv-00290-SLG　Document 101　Filed 05/26/21　Page 10 of 36

discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv*., 807 F.3d 1031, 1042 (9th Cir. 2015). The Court's review is limited to "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989); *San Luis & Delta-Mendota Water Auth*., 747 F.3d at 601. The agency's decision is "entitled to a presumption of regularity," and the court may not substitute its own judgment for that of the agency. *San Luis & Delta-Mendota Water Auth.*, 747 F.3d at 601.

The "traditional deference to the agency is at its highest" where, as in this case, the "court is reviewing an agency action that required a high level of technical expertise." *Ctr. for Biological Diversity*, 807 F.3d at 1043; *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc*., 462 U.S. 87, 103 (1983) ("When examining [an agency's] scientific determination, as opposed to simple findings of fact, a reviewing court must generally be at its most deferential."); *Arizona ex rel. Darwin v. U.S. Env't Prot. Agency*, 852 F.3d 1148, 1157 (9th Cir. 2017) ("Courts must be particularly careful in reviewing questions involving 'a high level of technical expertise' because such matters are normally best left to the experience and judgment of the agency."). Moreover, a reviewing court may not weigh conflicting expert opinions or consider whether the agency employed the best scientific methods. *Friends of Endangered Species, Inc. v. Jantzen*, 760 F.2d 976, 986 (9th Cir. 1985). Nor may a reviewing court sit as a "panel of scientists." *Lands Council v. McNair*, 537 F.3d 981, 988 (9th Cir. 2008) (*en banc*), *overruled on other grounds by*

*Sovereign Iñupiat for a Living Arctic v. BLM*  Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*  Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.  Page 11 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 11 of 36

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008). Instead, "[w]hen specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Marsh*, 490 U.S. at 378; *see also Lands Council*, 537 F.3d at 1000.

## ARGUMENT

I.     **BLM and the Corps fully satisfied the requirements of NEPA in approving the Willow Master Development Plan.**

Plaintiffs in each these cases have asserted violations of NEPA, 42 U.S.C. §§ 4321-4370dd. NEPA is a procedural statute that requires federal agencies to prepare an environmental impact statement prior to taking "major Federal actions significantly affecting the quality of the human environment." *Id.* § 4332(2)(C). "NEPA aims to make certain that 'the agency . . . will have available, and will carefully consider, detailed information concerning significant environmental impacts,' and 'that the relevant information will be made available to the larger [public] audience.'" *Lands Council*, 537 F.3d at 1000; *see also Balt. Gas & Elec.*, 462 U.S. at 97. The statute does not, however, mandate any particular result. As the Supreme Court explained:

> If the adverse environmental effects of the proposed action are adequately identified and evaluated, the agency is not constrained by NEPA from deciding that other values outweigh the environmental costs . . .. Other Statutes may impose substantive environmental obligations on federal agencies, but NEPA merely prohibits uninformed—rather than unwise— agency action.

*Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350-351 (1989) (citations and footnote omitted); *see also Lands Council*, 537 F.3d at 1000 ("NEPA . . . does not

*Sovereign Iñupiat for a Living Arctic v. BLM*          Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*                Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.          Page 12 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 12 of 36

impose any substantive requirements on federal agencies—it exists to ensure a process." (quoting *Inland Empire Pub. Lands Council v. U.S. Forest Serv.*, 88 F.3d 754, 758 (9th Cir. 1996)).

A. **Plaintiffs' NEPA claims are barred by the statute of limitations.**

As this Court properly held in denying plaintiffs' motions for preliminary injunction, the Naval Petroleum Reserves Production Act ("NPRPA") imposes a strict 60-day statute of limitations in which to challenge an EIS "concerning oil and gas leasing in the National Petroleum Reserve–Alaska." Order, Feb. 1, 2021 (ECF No. 44, Case No. 0290; ECF No. 43, Case No. 0308); 42 U.S.C. § 6506a(n)(1). Plaintiffs did not meet that requirement and their NEPA claims are thus time-barred.[2] Nonetheless, BLM and the Corps satisfied NEPA's procedural requirements.

B. **BLM and the Corps satisfied NEPA's "hard look" requirement.**

NEPA requires agencies to take a "hard look" at the environmental consequences of their actions by preparing an EIS for each "major Federal action[] significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C); *Sierra Club v. Bosworth*, 510 F.3d 1016, 1018 (9th Cir. 2007). The EIS must "provide [a] full and fair discussion of significant environmental impacts" so as to "inform decisionmakers and the public of the reasonable alternatives which would avoid or minimize adverse impacts or

---

[2] In order the minimize duplicative briefing, the State adopts by reference the arguments regarding Plaintiffs' failure to satisfy the NPRPA's statute of limitations presented by Federal defendants and Intervenor-Defendant ConocoPhillips Alaska, Inc.

*Sovereign Iñupiat for a Living Arctic v. BLM*      Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*      Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.      Page 13 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 13 of 36

enhance the quality of the human environment." 40 C.F.R. § 1502.1. The EIS must

include statements on:

> (i) the environmental impact of the proposed action, (ii) any adverse
> environmental effects which cannot be avoided should the proposal be
> implemented, (iii) alternatives to the proposed action, (iv) the relationship
> between local short-term uses of man's environment and the maintenance
> and enhancement of long-term productivity, and (v) any irreversible and
> irretrievable commitments of resources which would be involved in the
> proposed action should it be implemented.

42 U.S.C. § 4332(2)(C). The Ninth Circuit has held that "when the [agency] provides a

full and fair discussion of environmental impacts and its EIS includes these necessary

components, the [agency] has taken the requisite 'hard look.'" *Lands Council*, 537 F.3d

at 1000-1001.

### 1. BLM and the Corps obtained adequate project design and baseline data necessary to take a "hard look."

NEPA requires that an "environmental analysis be specific enough to ensure

informed decision-making and meaningful public participation." *Se. Alaska Conservation

Council v. U.S. Forest Serv.*, 443 F. Supp. 3d 995, 1009 (D. Alaska 2020); *Or. Env't

Council v. Kunzman*, 817 F.2d 484, 493 (9th Cir. 1987) (EIS must "reasonably set forth

sufficient information to enable the decisionmaker to consider the environmental factors

and make a reasoned decision"); *Stein v. Barton*, 740 F. Supp. 743, 748 (D. Alaska 1990)

("In this circuit, courts employ a 'rule of reason' which requires that an EIS contain a

reasonably thorough discussion of the significant aspects of the probable environmental

consequences of the action."). A reviewing court must "make a 'pragmatic judgment

whether the EIS's form, content and preparation foster both informed decisionmaking

*Sovereign Iñupiat for a Living Arctic v. BLM*     Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*     Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.     Page 14 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 14 of 36

and informed public participation.'" *Stein*, 740 F. Supp. at 748 (quoting *Or. Env't Council*, 817 F.2d at 492). Further, the reviewing court may not "fly speck" an EIS and hold it insufficient on the basis of inconsequential, technical deficiencies. *Or. Env't Council*, 817 F. 2d at 492.

SILA plaintiffs argue that BLM and the Corps failed to obtain project design and baseline data from which to conduct the environmental analysis. SILA Br. at 12-17. Specifically, SILA argues that the FEIS included insufficient information regarding the length and location of roads, how much gravel would be required for each road, and site-specific impacts resulting from each road. *Id.* at 13. SILA also argues that the FEIS is not specific enough because BLM analyzed a range of the number of wells that might be drilled per pad instead of targeting a specific number. *Id.* However, SILA mischaracterizes the FEIS.

The FEIS provided a series of maps depicting the location of permanent and temporary infrastructure, including gravel roads, the Colville River ice bridge, the freshwater reservoir, boat ramps, locations of culvert batteries, the airstrip, etc. BLM AR182753-182763. The FEIS also analyzed a maximum of 251 wells that could be drilled in the Project area. BLM AR182398. While the precise locations may shift slightly once surveying and construction begin, based upon on-the-ground conditions, the level of detail provided in the FEIS is sufficient to inform a well-reasoned decision regarding Project impacts. *Dep't of Transp. v. Public Citizen*, 541 U.S. 752, 768 (2004).

*Sovereign Iñupiat for a Living Arctic v. BLM*     Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*     Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.     Page 15 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 15 of 36

SILA plaintiffs have failed to show why the disclosure of any additional details beyond those provided in the FEIS regarding site-specific impacts is necessary in order to "foster both informed decision-making and informed public participation." *Or. Env't Council*, 817 F.2d at 492. Indeed, SILA plaintiffs have not even attempted such a showing. Accordingly, their arguments are without merit and must be rejected.[3]

## 2. BLM adequately analyzed the Willow Project's potential impacts to the Teshekpuk Caribou Herd.

The Center argues that NEPA requires that BLM provide a greater level of detail in the FEIS regarding the potential winter impacts to the Teshekpuk Caribou Herd ("TCH"). Center Br. at 28-30. Caribou are a game species in Alaska and are not listed as threatened or endangered under the ESA. Nonetheless, the Center appears to demand an analysis typically reserved for imperiled species. This level of analysis, however, is not required.[4]

Statewide, caribou are distributed in 32 herds, totaling approximately 950,000 animals. Although population numbers of caribou are somewhat cyclical, the most recent data indicate that TCH population fluctuations have been moderate. In 2013, the TCH population was estimated at 39,172 animals, in 2017, the most recent population estimate, the herd has increased to 56,255 animals. BLM AR182553. Alaska retains management

---

[3] In order the minimize duplicative briefing, the State adopts by reference the arguments presented by Federal defendants and Intervenor-Defendant ConocoPhillips Alaska, Inc. in response to SILA Plaintiffs' NEPA claims.

[4] The State also adopts by reference those arguments presented by Federal defendants and other intervenor-defendants on this issue.

*Sovereign Iñupiat for a Living Arctic v. BLM*     Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*     Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.     Page 16 of 36

Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 16 of 36

authority and actively manages caribou herds and habitat, including the TCH. The State conducts extensive research and gathers and disseminates essential data, partners with other governmental agencies and entities in undertaking appropriate herd management, and performs myriad other wildlife management activities, including managing caribou hunting seasons and setting harvest numbers. On average, people harvest about 22,000 caribou in Alaska each year. Indeed, Caribou are an important subsistence resource. Accordingly, BLM performed an analysis of potential impacts to subsistence that could result from the Willow Project and found that the herd would be largely unaffected. BLM AR185752-185820.

Although the Center argues that BLM ignored potential winter impacts, it then points to portions of the administrative record where those potential impacts were disclosed. *See, e.g.*, Center Br. at 28 (citing 2013 Integrated Activity Plan). As noted above, the depth of treatment of an issue in NEPA is governed by a "rule of reason." *Or. Env't Council*, 817 F.2d at 492. Here, the depth of analysis demanded by the Center is "fly-specking" and exceeds the level of detail required to analyze potential seasonal impacts to a game species that enjoys a robust population. BLM provided a reasonable analysis of the potential impacts to the TCH that may result from the Willow Project. Accordingly, the Center's arguments should be rejected.

### C. BLM and the Corps satisfied NEPA's cumulative effects analysis requirement.

Where several actions combine to have a cumulative environmental effect, the consequence must be addressed in an EIS. *City of Tenakee Springs v. Clough*, 915 F.2d

*Sovereign Iñupiat for a Living Arctic v. BLM*       Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*       Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.       Page 17 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 17 of 36

1308, 1312 (9th Cir. 1990). A cumulative impact is defined as "the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions . . .. Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time." 40 C.F.R. § 1508.7. The Ninth Circuit noted that a cumulative effects analysis has two "critical features": It must "not only describe related projects but also enumerate the environmental effects of those projects. Second, it must consider the interaction of multiple activities and cannot focus exclusively on the environmental impacts of an individual project." *Or. Nat. Res. Council Fund v. Brong*, 492 F.3d 1120, 1133 (9th Cir. 2007) (citations omitted).

SILA plaintiffs first argue that BLM did not adequately consider the reasonably foreseeable future actions ("RFFAs"), in violation of NEPA's cumulative effects analysis requirements. SILA Br. at 17-23. SILA points to a table in which BLM lists those RFFAs that may interact with the Willow Project, and then asserts that no analysis of the cumulative effects of are provided for three RFFAs. SILA Br. at 17 (citing BLM AR180251-180253).[5] SILA plaintiffs also argue that BLM failed to consider potential cumulative effects to fish and polar bears. SILA Br. at 20-23. These arguments have no basis in fact and must be rejected.[6]

---

[5] The State notes that SILA cites to the administrative FEIS, not the issued FEIS. The proper cite should be to BLM AR182669-182671.

[6] In order the minimize duplicative briefing, the State adopts by reference the arguments presented by Federal defendants and Intervenor-Defendant ConocoPhillips Alaska, Inc. in response to SILA Plaintiffs' cumulative effects claims.

*Sovereign Iñupiat for a Living Arctic v. BLM*　　　　　Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*　　　　　Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.　　　　　Page 18 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 18 of 36

Although SILA makes bald assertions that the FEIS did not evaluate cumulative effects, SILA ignores 15 pages of analysis in which the cumulative effects of the RFFAs are analyzed, including their effects on wildlife resources such as fish and polar bears. BLM AR182671-182685. For example, in Table 3.19.3, BLM explains that "Nanushuk Pad (proposed)," "Nanushuk Drill Site 2 (proposed)," "Nanushuk Drill Site 3 (proposed)," "Nanushuk Operations Center (proposed)," "Greater Willow Potential Drill Site #1," and "Greater Willow Potential Drill Site #2" were specifically included in BLM's cumulative impacts to air quality analysis. BLM AR182674-182675. Although BLM combines impacts in subsequent cumulative impacts analyses due to the inherent speculative nature of oil and gas development, all RFFAs were considered. BLM AR182669 ("For the EIS, exploration activity is grouped as one RFFA due to the disparate and constantly changing details about activities by a wide variety of project proponents and the uncertainty related to any one proponent's exploration plans beyond the currently permitted activity."). BLM's analysis satisfies NEPA.

### D.    BLM adequately analyzed greenhouse gas emissions.

Plaintiffs argue that BLM's analysis of greenhouse gas effects is insufficient because it purportedly does not include sufficient data on global energy consumption. SILA Br. at 23-24; Center Br. at 20-23. These arguments are without merit. The global energy consumption data that plaintiffs require was unavailable to BLM and the Bureau of Ocean Management ("BOEM") (the agency upon whose modelling BLM relied) when

*Sovereign Iñupiat for a Living Arctic v. BLM*          Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*               Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.          Page 19 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 19 of 36

BLM made its decision.[7] Although NEPA requires an agency to consider reasonably

foreseeable impacts, NEPA does not "'require the government to do the impractical,' if

not enough information is available to permit meaningful consideration." *Env't Prot.*

*Info. Ctr. v. U.S. Forest Serv.*, 451 F.3d 1005, 1014 (9th Cir. 2006) (quoting *Kern v. U.S.*

*Bureau of Land Mgmt.*, 284 F.3d 1062, 1075 (9th Cir. 2002)); *see* 40 C.F.R. § 1502.22

(2019).

Here, BLM fully disclosed its inability to estimate differences in greenhouse gas

emissions caused by changes in foreign consumption. BLM AR183508. To "model the

effect that U.S. [oil] exports would have on net global greenhouse-gas emissions would

require projections of how each fuel source (nuclear, renewable, etc.) would be affected

in each potential [oil]-importing nation. Such an analysis . . . would require consideration

of the dynamics of all energy markets in [oil]-importing nations, and given the many

uncertainties in modeling such market dynamics, the analysis would be too speculative to

---

[7] Plaintiffs primarily rely on a single decision, *Center for Biological Diversity v. Bernhardt*, 982 F.3d 723 (9th Cir. 2020). In that case, however, the court substituted its own opinion of economic data, or lack thereof, to fly speck the BOEM's treatment of global energy consumption. *See id.* at 736-741. For example, the court critiqued BOEM's disclosure that it did not have information that the court found necessary because the agency "does not cite any materials in support of these statements nor describe the research it relied upon to reach these conclusions." *Id.* at 738. In effect, the court found BOEM's treatment insufficient because it did not cite to non-existent data or reports. *Id.* Instead of requiring the impossible, as the court did in *Center for Biological Diversity*, this court should adopt the treatment of incomplete or unknown global energy demand provided in *Sierra Club v. U.S. Department of Energy*, 867 F.3d 189, 214 (D.C. Cir. 2017), a case directly on point, and one that properly applies the APA's highly deferential standard of review.

*Sovereign Iñupiat for a Living Arctic v. BLM*      Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*      Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.      Page 20 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 20 of 36

inform" the decision-making process. *Sierra Club*, 867 F.3d at 214 (internal quotation

and citation omitted). Plaintiffs' success on this claim turns on the Court's willingness to

accept analysis based on unprovable speculation. NEPA mandates the use of "high

quality" scientific information and demands "scientific integrity." 40 C.F.R. §§

1500.1(b), 1502.24 (2019). Accordingly, this Court should reject plaintiffs' conjecture

and accept BLM's scientifically-supported greenhouse gas analysis.[8]

### E. BLM considered a reasonable range of alternatives.

NEPA requires that federal agencies "study, develop, and describe appropriate

alternatives to recommended courses of action in any proposal which involves unresolved

conflicts concerning alternative uses of available resources." 42 U.S.C. § 4332(2)(E).

NEPA does not directly specify, however, the range of alternatives that must be studied,

which is a matter left to the agency's discretion. The Ninth Circuit has held repeatedly

that the decision of which alternatives to consider is bound by a rule of reason and

practicality. *California v. Block*, 690 F.2d 753, 767 (9th Cir. 1982) ("Judicial review of

the range of alternatives considered by an agency is governed by a 'rule of reason' that

requires an agency to set forth only those alternatives necessary to permit a 'reasoned

choice.'"); *City of Carmel-by-the-Sea v. U.S. Dep't of Transp.*, 123 F.3d 1142, 1155 (9th

Cir. 1997) (holding that an EIS "need not consider an infinite range of alternatives, only

reasonable or feasible ones."); *see Public Citizen*, 541 U.S. at 768 ("inherent in NEPA

---

[8] In order the minimize duplicative briefing, the State adopts by reference the arguments
presented by Federal defendants and Intervenor-Defendant ConocoPhillips Alaska, Inc.
in response to Plaintiffs' greenhouse gas claims.

*Sovereign Iñupiat for a Living Arctic v. BLM*        Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*              Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.        Page 21 of 36

Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 21 of 36

and its implementing regulations is a rule of reason, which ensures that agencies determine whether and to what extent to prepare an EIS based on the usefulness of any new potential information to the decisionmaking process" (internal quotation omitted)). In reviewing whether an agency should have considered a particular alternative, the Ninth Circuit has consistently held that an agency "need not consider an alternative 'whose effect cannot be reasonably ascertained, and whose implementation is deemed remote and speculative.'" *Block*, 690 F.2d at 767 (*quoting Save Lake Washington v. Frank*, 641 F.2d 1330, 1334 (9th Cir. 1981)). Moreover, an agency is permitted to reject alternatives that do not meet the purpose and need of the proposed project, so long as they do not define the project so narrowly as to foreclose a reasonable consideration of alternatives. *Friends of the Se's Future v. Morrison*, 153 F.3d 1059, 1067 (9th Cir. 1998); *Headwaters, Inc. v. Bureau of Land Mgmt.*, 914 F.2d 1174, 1180 (9th Cir. 1990).

Here, the Center argues that BLM violated NEPA by failing to consider a reasonable range of alternatives. Center Br. at 23-27. Specifically, the Center argues that BLM failed to consider alternatives: (1) that would prohibit permanent infrastructure in the Teshekpuk Lake and Colville River Special Areas; (2) that would permit drilling only during the winter season; and (3) that would prohibit permanent roads. *Id.* The State adopts by reference those arguments made by federal defendants and intervenor-defendant ConocoPhillips Alaska, Inc. in their respective response briefs. For those reasons, this court should hold that the range of alternatives considered by BLM was sufficient.

*Sovereign Iñupiat for a Living Arctic v. BLM*  Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*  Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.  Page 22 of 36

Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 22 of 36

**II.    The Corps fully complied with the Clean Water Act in issuing its Section 404 Permit.**

    **A.    The Willow Project will not cause significant degradation.**

Section 404 of the Clean Water Act authorizes the Corps to issue permits for the discharge of dredged or fill material into the navigable waters of the United States only if certain conditions are met. 33 U.S.C. § 1344(d). "The Section 404 permit process is governed simultaneously by Corps Regulations, 33 C.F.R. Parts 320-329, and by EPA guidelines, 40 C.F.R. Part 230. Both sets of rules must be observed." *Friends of the Earth v. Hintz*, 800 F.2d 822, 830 (9th Cir. 1986).

Here, the SILA plaintiffs have repacked one of their NEPA claims regarding baseline data into a claimed violation of the CWA. SILA Br. at 26-29; *see id.* at 26 ("As detailed above, the Corps lacked baseline resource and project information . . ..."). However, for the same reasons that the FEIS satisfied NEPA's baseline requirements, the FEIS also satisfied the baseline requirements of a CWA Section 404 permit evaluation, and the Corps properly found that the Willow Project would not result in significant degradation to waters of the United States ("WOUS").[9]

    **B.    The Corps properly concluded that impacts from the Willow Project will be adequately mitigated.**

SILA plaintiffs argue that the mitigation plan for the Willow Project is insufficient and will not adequately mitigate the direct and indirect impacts on WOUS. SILA Br. at

---

[9] In order the minimize duplicative briefing, the State adopts by reference the arguments presented by Federal defendants and Intervenor-Defendant ConocoPhillips Alaska, Inc. in response to SILA Plaintiffs' significant degradation arguments.

*Sovereign Iñupiat for a Living Arctic v. BLM*    Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*    Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.    Page 23 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 23 of 36

29-33. SILA, however, fails to acknowledge the *de minimis* nature of the Project's impacts when viewed in context. The Willow Project touches, to some extent, ten identified sub-watersheds. Corps AR000185-000186. Those watersheds total over 1.7 million acres, most of which are wetlands. *Id.* The Willow Project will result in the disturbance of 624.3 acres of that 1.7 million acres, or 0.036% of the total watershed. *Id.* Even if the Willow Project's impacts are added to existing disturbances in the area, the total impacts are only 4,075.2 acres, or 0.27% of the total watershed area. *Id.* Nonetheless, the Corps has required compensatory mitigation in the form of wetland preservation and restoration and has approved ConocoPhillips Alaska, Inc.'s proposed mitigation plan. *See* Corps AR000326-000612. SILA plaintiffs' arguments ignore the unique issues complicating compensatory mitigation determinations in Alaska and should be denied. *See, e.g.*, SILA Br. at 32-33 (arguing that preservation is inadequate mitigation, despite the generally undeveloped nature of the Willow Project area and surrounding watershed).

For almost 30 years, the Corps and the EPA have recognized that wetlands mitigation in Alaska presents unique complexities. Based on this recognition, EPA and the Corps have developed Alaska-specific guidance for mitigation under Section 404. Wetlands mitigation in Alaska is fundamentally different than it is in the lower 48 states because of the sheer quantity of untouched wetlands in Alaska. Alaska holds more wetlands (approximately 175,000,000 acres of wetlands, comprising about 43% of the surface area of the State) than the rest of the Nation combined (103,000,000 acres,

*Sovereign Iñupiat for a Living Arctic v. BLM*     Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*     Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.     Page 24 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 24 of 36

comprising about 5% of the surface area). Alaska Wetlands Initiative Summary Report, 2 (May 13, 1994), *available at* archive.epa.gov/water/archive/web/pdf/alaska.pdf. EPA and the Corps have long recognized that the goal of achieving "no net loss" of wetlands acreage may not be met on an individual permit basis, and "may not be practicable in areas where wetlands are abundant." *Id.* at 1 (describing February 1990 EPA and Department of the Army Memorandum of Agreement on Mitigation). EPA and the Corps expressly noted that Alaska poses specific mitigation complexities in their January 1992 joint guidance emphasizing that compensatory mitigation may not be required in areas where "it may not be practicable to restore or create wetlands." Clarification of the Clean Water Act Section 404 Memorandum of Agreement on Mitigation (Jan. 11, 1992).

To further understand how to best apply the Guidelines in Alaska, the agencies convened a detailed study – the Alaska Wetlands Initiative – with a broad range of stakeholders, including the State. Alaska Wetlands Initiative Summary Report at 7. The Alaska Wetlands Initiative resulted in several policy refinements and goals, the most relevant of which here was the intent to issue a "written statement that recognizes the flexibility to consider circumstances in Alaska in implementing alternatives analyses and compensatory mitigation requirements under the Section 404 regulatory program," which was intended to provide "greater predictability to the Section 404 program." *Id.* at iii, 11. The statement was attached to the Summary Report, and "recognize[d] that . . . restoring, enhancing, or creating wetlands through compensatory mitigation may not be practicable due to limited availability of sites or technical or logistical issues." Statements on the

*Sovereign Iñupiat for a Living Arctic v. BLM*          Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*          Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.          Page 25 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 25 of 36

Mitigation Sequence and No Net Loss of Wetlands in Alaska (May 13, 1994), *available at* archive.epa.gov/water/archive/web/pdf/alaska.pdf, 39-47.

Recently, the agencies reiterated their understanding that mitigation in Alaska is unique with an updated Memorandum of Agreement ("2018 MOA") on mitigation sequencing. Memorandum of Agreement between the Department of the Army and the Environmental Protection Agency Concerning Mitigation Sequence for Wetlands in Alaska under Section 404 of the Clean Water Act (June 15, 2018), *available at* https://www.epa.gov/sites/production/files/2018-06/documents/epa_army_moa_alaska _mitigation_cwa_404_06-15-2018_0.pdf. The 2018 MOA repeats the agencies' continuing acknowledgement that "[r]estoring, enhancing, or establishing wetlands for compensatory mitigation may not be practicable due to limited availability of sites and/or technical logistical limitations." *Id.* at 2. It also reiterated four important points regarding compensatory mitigation:

- "Compensatory mitigation options over a larger watershed scale may be appropriate given that compensation options are frequently limited at a smaller watershed scale." *Id.* at 2; *see also id.* at 5.

- "Where a large proportion of the land is under public ownership, compensatory mitigation opportunities may be available on public land." *Id.*; *see also id.* at 5-6.

- "Out-of-kind compensatory mitigation may be appropriate when it better serves the aquatic resource needs of the watershed." *Id.* at 3; *see also id.* at 6-7.

- "[C]ompensatory mitigation provided through preservation should be, to the extent appropriate and practicable, conducted in conjunction with aquatic resource restoration, establishment, and/or enhancement activities," but "[t]his requirement may be waived by the Corps in

*Sovereign Iñupiat for a Living Arctic v. BLM*      Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*      Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.      Page 26 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 26 of 36

cases where preservation has been identified as a high priority using a watershed approach." *Id.* at 7.

In sum, the 2018 MOA requires a thoughtful balance between environmental conservation and the practical considerations associated with resource development in Alaska in recognition of the reality that the pristine nature of much of the state significantly limits the opportunities for compensatory mitigation.

Here, the Corps appropriately took all of the circumstances into account, and accepted the mitigation plan proposed by the project proponent. Instead of acknowledging the complexities of mitigation in Alaska, the SILA plaintiffs appear to prefer a no-net-loss approach, which is wholly inappropriate in the context of the Willow Project. The level of compensatory mitigation required by the Corps and agreed to by ConocoPhillips Alaska, Inc. was appropriate given the Project's location and level of impact, and plaintiffs' claims to the otherwise should be rejected.[10]

## III.    The FWS fully complied with the ESA in issuing its Biological Opinion.

The process by which federal agencies satisfy their obligation to avoid jeopardy and adverse modification under Section 7(a)(2) of the ESA is called "consultation." Formal consultation is required when a proposed federal action is likely to adversely affect listed species or critical habitat. 50 C.F.R. §§ 402.12(k), 402.14(a). Following the completion of formal consultation, FWS provides a biological opinion to the federal

---

[10] The State also adopts by reference the arguments presented by Federal defendants and Intervenor-Defendant ConocoPhillips Alaska, Inc. in response to SILA Plaintiffs' CWA Section 404 mitigation arguments.

*Sovereign Iñupiat for a Living Arctic v. BLM*          Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*          Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.          Page 27 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 27 of 36

agency. 16 U.S.C. § 1536(b); 50 C.F.R. § 402.14(g), (h); *see Conservation Cong. v. U.S. Forest Serv.*, 720 F.3d 1048, 1050-1051 (9th Cir. 2013) (summarizing the consultation process); *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife Serv.*, 273 F.3d 1229, 1239 (9th Cir. 2001) (same).

If FWS ultimately determines that the proposed action is likely to jeopardize a listed species or adversely modify its critical habitat, FWS must suggest reasonable and prudent alternatives to the proposed action that can be taken to avoid a violation of Section 7(a)(2). 16 U.S.C. § 1536(b)(3); 50 C.F.R. § 402.14(g), (h). FWS is required to utilize the expertise of the consulting agency and any non-federal permit applicant in developing these alternatives. 50 C.F.R. § 402.14(g).

FWS must also determine whether any members of a listed species will be "incidentally taken" by the proposed action. In such event, FWS will issue an incidental take statement ("ITS"). *See* 16 U.S.C. §§ 1536(b)(4), (o); 50 C.F.R. § 402.14(i). An ITS provides a "safe harbor" by allowing the taking of members of listed species notwithstanding the prohibition found in Section 9. An ITS must, at a minimum, specify the following:

    i.     The impact, *i.e.*, the amount or extent of incidental take that is authorized.

    ii.    Any reasonable and prudent measures that FWS considers necessary or appropriate to minimize such impact.

*Sovereign Iñupiat for a Living Arctic v. BLM*      Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*      Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.      Page 28 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 28 of 36

iii.    The terms and conditions that must be complied with by the federal agency
or any applicant to implement the reasonable and prudent measures,
including any reporting requirements.

16 U.S.C. § 1536(b)(4) (subsection (iii) omitted); *see Ariz. Cattle Growers'*, 273 F.3d at
1239-1242 (discussing ITS requirements and their relationship to Section 7 consultation).
In the event that the amount or extent of incidental taking specified in the ITS is
exceeded, Section 7 consultation must be reinitiated. 50 C.F.R. §§ 402.14(i)(4),
402.16(a).

A.    **FWS findings that the Willow Project is "not likely to jeopardize" the
continued existence of polar bears and "not likely to adversely affect"
designated critical habitat were appropriate.**

Plaintiffs argue that FWS improperly relied on "uncertain" mitigation measures in
consulting on the impacts of the Willow Project to support its "no jeopardy" and "no
adverse modification" findings. SILA Br. at 35-37; Center Br. at 30-34. Plaintiffs,
however, misconstrue FWS's findings and improperly rely on *Center for Biological
Diversity v. Bernhardt*, 982 F.3d 723.

In finding that the Willow Project would not likely jeopardize the continued
existence of the polar bear species, FWS evaluated the project design and location, as
well as minimization and mitigation measures included within the overall development
plan to limit impact to polar bears. Evaluating all factors, FWS found:

We find that a host of construction and production activities associated with
the Proposed Action would intermittently incidentally expose small
numbers of polar bears of the [Southern Beaufort Sea] stock to disturbance.
We also find that most of those exposures would not be biologically

*Sovereign Iñupiat for a Living Arctic v. BLM*      Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*      Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.      Page 29 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 29 of 36

significant. The spatial and temporal distance between disturbance events
would limit the potential for impacts to be biologically significant to
individual bears and further reduce the potential for biologically significant
impacts to individual bears to compound to effects at the stock level, let
alone the species level.

FWS AR000942. This finding is not based upon any mitigation measures, defined or

undefined, contained within the BiOp, but is based on the proposed project itself. *Id.*

Accordingly, plaintiffs' assertions that the "no jeopardy" finding was based on uncertain

mitigation measures is factually incorrect.

Further, as to impacts to critical habitat, FWS determined that very little of the

Project area intersects polar bear critical habitat. FWS AR000943. FWS noted that sea ice

critical habitat or barrier island critical habitat potentially might be disturbed should a

spill of oil or other petroleum products occur; however, "several measures included in the

Project Description would reduce the likelihood of spills occurring, the magnitude of

spills in the event that one or more do occur, and the likelihood of spill in or near

wetlands, where they could be transported to the marine environment." *Id.* Again, this

finding isn't based on future mitigation, but on project design. Likewise, FWS found that

potential impacts to terrestrial denning habitat to be insignificant based upon Project

siting. *Id.* Accordingly, plaintiffs' arguments should be rejected.[11]

---

[11] In order the minimize duplicative briefing, the State adopts by reference the arguments
presented by Federal defendants and Intervenor-Defendant ConocoPhillips Alaska, Inc.
in response to SILA Plaintiffs' Endangered Species Act arguments.

*Sovereign Iñupiat for a Living Arctic v. BLM*      Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*      Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.      Page 30 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 30 of 36

## B. The BiOp's take findings are reasonably supported.

Plaintiffs conclude their ESA arguments asserting that FWS's take findings are unlawful. SILA Br. at 37-40; Center Br. at 35-36. These arguments fail, however, for the simple fact that the BiOp does not authorize any incidental take at this time.[12] FWS AR000945 ("The Service cannot authorize take of polar bears under the ESA at this time"). Nonetheless, FWS opined as to what level and manner of take could occur as a result of the Willow Project:

> Incidental effects to polar bears from the Proposed Action are expected to be in the form of short-term, minor changes in behavior which do not create a likelihood of injury (much less cause injury), or are not reasonably certain to occur and therefore would not constitute harassment or other any form of take as defined by the ESA and implementing regulations (16 U.S.C. 1532 (19), 50 CFR §17.3). However, we anticipate that up to 2 bears may be hazed with non-lethal contact rounds over the [30-year] life of the project.

FWS AR000945. Thus, FWS found that that any take of polar bear was extremely unlikely, and if take were to occur, it would most likely be in the form of harassment to two bears over the course of thirty years. This observation, however, is not an incidental take authorization.

This Court need not address the contents of an ITS until FWS actually issues one. That will not occur until take is authorized under the provisions of the Marine Mammal Protection Act ("MMPA") for site-specific actions. *See* FWS AR000945. Once MMPA

---

[12] In order the minimize duplicative briefing, the State adopts by reference the arguments presented by Federal defendants and Intervenor-Defendant ConocoPhillips Alaska, Inc. in response to SILA Plaintiffs' Endangered Species Act arguments.

*Sovereign Iñupiat for a Living Arctic v. BLM*        Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*                Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.        Page 31 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 31 of 36

authorization is provided, FWS will be able to revise the BiOp, consistent with the holding of *Center for Biological Diversity v. Bernhardt*, 982 F.3d at 748-750.

## IV. Because the BiOp is lawful, the Center's claim against BLM must be rejected.

The Center argues that because the BiOp is unlawful, then the BLM's reliance on the BiOp must also be held unlawful. Center Br. at 36-37. Accordingly, the Center's claim against BLM is based entirely on this Court finding the FWS unlawfully issued the BiOp. As demonstrated above, and by the memoranda submitted by the federal defendants and other intervenor-defendants,[13] the FWS lawfully issued the BiOp. Therefore, the Center's claim against the Forest Service must be rejected. *See San Luis & Delta-Mendota Water Auth.*, 747 F.3d at 640.

## V. Plaintiffs' requested relief should be denied.

Plaintiffs have requested that the Willow Project's ROD, FEIS, BiOp, and other permits be set aside in their entirety. SILA Br. at 41-42; Center Br. at 37. As demonstrated above and by the memoranda submitted by the federal defendants and other intervenor-defendants, BLM lawfully issued the ROD and FEIS, FWS lawfully issued the BiOp, and the Corps lawfully issued the Section 404 permit. Even if this Court could find any of plaintiffs' arguments meritorious, their requested relief goes too far. "Whether agency action should be vacated depends on how serious the agency's errors are and the disruptive consequences of an interim change that may itself be changed." *Cal. Cmtys.*

---

[13] The State joins the arguments of the federal defendants and the intervenor-defendants on this issue.

*Sovereign Iñupiat for a Living Arctic v. BLM*   Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*   Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.   Page 32 of 36

*Against Toxics v. U.S. Env't Prot. Agency*, 688 F.3d 989, 992 (9th Cir. 2012) (*quoting*

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-151 (D.C. Cir.

1993) (internal quotation marks omitted)).

Should the Court find merit in any of plaintiffs' claims, it should sever those

portions of the ROD, FEIS, BiOp, or Section 404 permit found insufficient and remand

only those portions to the respective agency for further actions consistent with this

Court's conclusions. The remainder of the Willow Project approvals should be permitted

to remain in effect during any ordered remand.

## CONCLUSION

For the foregoing reasons, and those more fully presented by the federal

defendants, intervenor-defendant ConocoPhillips Alaska, Inc., and intervenor-defendant

North Slope Borough, plaintiff Sovereign Iñupiat for a Living Arctic, *et al.*'s and plaintiff

Center for Biological Diversity, *et al.*'s respective motions for summary judgment should

be denied.

DATED: May 26, 2021.

TREG R. TAYLOR
ATTORNEY GENERAL

By:    /s/ Ronald W. Opsahl
        Ronald W. Opsahl
        Senior Assistant Attorney General
        Alaska Bar No. NA20118
        John M. Ptacin
        Chief Assistant Attorney General
        Alaska Bar No. 0412106
        Alaska Department of Law
        1031 West Fourth Avenue, Suite 200
        Anchorage, Alaska 99501

*Sovereign Iñupiat for a Living Arctic v. BLM*      Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*      Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.      Page 33 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 33 of 36

Phone: (907) 269-5232
Facsimile: (907) 276-3697
Email: john.ptacin@alaska.gov
ron.opsahl@alaska.gov

*Attorneys for the State of Alaska*

*Sovereign Iñupiat for a Living Arctic v. BLM*       Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*       Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.       Page 34 of 36
Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 34 of 36

**<u>Certificate of Compliance with Type-Volume Limit</u>**

      This document complies with the word limit of Local Civil Rule 7.4(a)(1) because, excluding the parts of the document exempted by Local Civil Rule 7.4(a)(4), this document contains 6,466 words.

<u>/s/ Ronald W. Opsahl</u>
Ronald W. Opsahl
Senior Assistant Attorney General

*Sovereign Iñupiat for a Living Arctic v. BLM*     Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*     Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.     Page 35 of 36

Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 35 of 36

## Certificate of Service

I certify that on **May 26, 2021**, the foregoing **State of Alaska's Combined Response to Plaintiffs' Motions for Summary Judgment** was served electronically on all parties listed on the CM/ECF system.


/s/ Leilani J. Tufaga
Law Office Assistant II

*Sovereign Iñupiat for a Living Arctic v. BLM*     Case No.: 3:20-cv-00290-SLG
*Center for Biological Diversity v. BLM*     Case No.: 3:20-cv-00308-SLG
State of Alaska's Comb. Resp. to Pls' Mots. for Summ. J.     Page 36 of 36

Case 3:20-cv-00290-SLG   Document 101   Filed 05/26/21   Page 36 of 36